No. 1165.

E. A. SULLIVAN vs. VICKSBURG, SHREVEPORT AND PACIFIC RAILROAD COMPANY.

Plaintiff, walking on an elevated plank-walk, constructed alongside of its track at a station by defendant for the use of passengers and the public, heard a train approaching behind him, and moved to the middle of the walk, where he would have been safe from being struck by any passing car of the ordinary width. The approaching train, however, was a construction train of peculiar build, having its brakes attached to the side of the cars instead of at the ends, and thus causing the brake-wheels to project some fourteen inches beyond the edge of the car. This wheel being of the height of plaintiff's head, struck him as the train passed and knocked him senseless, inflicting severe injuries.

Held, that plaintiff had the right to be on the walk, and to suppose himself in safety while occupying it at a point beyond the projection of all ordinary trains, and that he was guilty of no negligence.

Held, that defendant's employee seeing him there, and knowing the extraordinary projection of his brakes, was bound to recognize his danger, and guard against it; and hence, was guilty of negligence.

The court is averse to increasing the verdicts of juries, who rarely underestimate damages; but when the jury has failed to do justice, the court, in the exercise of its jurisdiction, must do it.

The verdict in this case is manifestly insufficient, and is increased from $100 to $600.

A PPEAL from the Fifth District Court, Parish of Ouachita. *Richardson*, J.

*C. J. & J. S. Boatner*, for Plaintiff and Appellant.

"A railroad company which grants the use of its road to another company, is responsible for accidents caused to passengers which itself carries, by the negligence of the other company thus running by its permission." Railroad Co. vs. Barrow, 5 Wall., p. 90; A and E railroad cases, vol 17, p. 649; 56 Ind. 511.

It is the duty of companies to keep in a safe and secure condition their premises, depots and approaches from thence to their passenger cars. Pierce on Railroads, pp. 275-6.

It is the duty of a railroad company to construct safe platforms for its passengers. Reynold vs. R. R. Co., 37 Ann. 698; Townes vs. R. R. Co., 37 Ann. 632; Penington vs. R. R. Co., 34 Ann. 777; Lehman vs. R. R. Co, 37 Ann. —; Wharton on Negligence, p. 654.

Where injury is partly due to negligence of the injured and partly by failure of the company to provide proper and suitable apparatus, the negligence of the injured will not exonorate the company from the consequences of its own default. Townes vs. R. R. Co., 37 Ann. 632; Grand Trunk R. R. Co. vs. Cummings, 106 N. S. 700; Ellis vs. R. R. Co., 95 N. Y. 546.

Malice will be presumed in all cases where there is a want of probable cause, and a wanton disregard of probable consequences that will follow the act of negligence or carelessness. 4 Ann. 377; 12 Ann. 53; 9 Ann 219; 6 Ann. 577; 15 Ann. 421; 29 Ann. 494; 33 Ann. 397; 9 R. 418, 387; 4 Cush. 217, 238; 5 Bing. N. C. 722.

The law blends together the interest of society and of the aggrieved individual and gives damages not only to compensate the sufferer but to punish the offender. Sedgwick on Measure of Damages, p. 36; 13 L. 110; 26 Ann. 313; 33 Ann. 393; 34 Ann. 1108.

The Supreme Court has the power, and it is its duty to disregard the verdict of a jury where it is palpably erroneous in allowing only nominal damages, and to give judgment for the amount it may think meets the ends of justice. Sedgwick on Damages, 2 vol., p. 661; 5 Bing. N. C. 424; 22 Conn. 74; 19 Boob. N. Y. 461; 13 L. 110 and cases there cited; 26 Ann. 313; 33 Ann. 397; 29 Ann. 223; 34 Ann. 1107.

*Stubbs & Russell,* for Defendant and Appellee.

————

The opinion of the Court was delivered by

FENNER, J. At Waverly station the defendant company's main track is situated at some distance from its depot building, and between the two runs a side-track. Between the two tracks defendant had constructed a plank-walk for platform slightly elevated above the tracks, and running for some distance beyond the depot front. Its object was to furnish a convenient landing-place for passengers getting on or off its cars.

It consisted of three parallel planks, and was from three to four feet wide. Between the edge of the walks and the main track there was a space of between 12 and 18 inches, and, inasmuch as an ordinary box or passenger car projects over the track about 22 to 24 inches, it follows that it would, in passing, project about 6 to 8 inches over the walk. Like conditions existed with reference to the side-track.

On December 31 plaintiff had gone to the station to meet some families of laborers who arrived on the passenger train.

Shortly afterward he observed that some children of the party were on the main track, and noticing that another train was approaching, he walked up this plank-walk to make them get off the track.

After doing so he proceeded on the same walk towards the wagons which were to receive the laborers, going in the same direction in which the approaching train was coming, and with his back toward it. As it neared him he moved from the edge to the middle of the walk, and then, considering himself in safety, paid no more attention to it. Any ordinary car would have passed without touching him; but it

51

chanced that this was a construction train running with its engine in the rear, and composed of flat cars for loading and unloading dirt, with a centre-piece down their middle as a guide for an unloading plow which passed along the whole train propelled by a wire-rope attached to the locomotive. This arrangement necessitated the placing of the brakes on the side, instead of at the ends of the several cars, as is usual. Hence, the wheels of the brakes projected some fourteen inches beyond the edge of the car, and being about the height of plaintiff's ear, the wheel struck him as the cars passed, inflicting the injuries for which the present suit in damages is brought.

We think the defendant is clearly liable. The plank-walk was built for the accommodation of passengers and the public, and the latter were invited to use it. Plaintiff was properly on the walk, and had the right to suppose that he was in safety there. Conceding that his eye might have informed him that the edge of the walk was too near the track to permit the passage of cars of ordinary width without projecting over it, yet he availed himself of this information, and occupied the middle plank, where he would have been safe from any ordinary train. It happened that there were some stationary box-cars on the side-track which projected over the opposite edge of the walk, and, if he had tried, he could not have moved much further away, though if he had moved a little farther, he would have escaped, as his companion did. Still, in occupying the middle plank, he passed beyond the reach of any ordinary car, and certainly had the right to suppose himself in absolute safety, as he would have been but for this unusual system of brakes. There is some evidence to show that the brake which struck him was bent outward, though this is not uncontradicted.

The engineer saw him, and knowing the projection of the brakes, and the situation of the platform, should have recognized and guarded against the danger.

Plaintiff was guilty of no negligence. He did not know, and was not bound to know, the existence of these unusually projecting brakes. He had a right to suppose he was safe, at least in the middle of that walk, and in taking that position, common experience and reasonable foresight assured him that, under all ordinary conditions, he ran no risk. The injury, therefore, was not an ordinary and natural sequence of his act, but was the result of extraordinary conditions brought about by the acts of defendant, and which plaintiff could not have foreseen, and had no right to anticipate. Summers vs. R. R., 34 Ann. 144.

In the case just quoted, the nature and characteristics of juridical negligence are fully discussed. The conduct of defendant falls precisely under the principle there approved as laid down by the Supreme Court of Pennsylvania : " When we are engaged in an act which the surrounding circumstances indicate may be dangerous to others, and when the event whose occurrence is necessary to make our act injurious is one which we can readily see may occur under the circumstances and unite with the act to commit the injury, we are culpable if we do not take all the care which prudent circumspection would suggest to avoid the injury." Fairbanks vs. Kerr, 70 Penn. St. 86.

The jury, which tried the case below, appreciated the facts as we have done, so far as defendant's liability is concerned, and gave a verdict for plaintiff for one hundred dollars.

Plaintiff is the appellant, and demands an increase of the allowance. He is clearly entitled to it.

With all our indisposition to increase verdicts for damages rendered by juries, who rarely under-estimate them, yet it is a matter within our jurisdiction, upon which we are in duty bound to pass, and we must do justice when clearly satisfied that the jury has failed to do it. Hence, in proper cases we have extended such relief. Scheen vs. Poland, 34 Ann. 1107 ; Decoux vs. Lieux, 33 Ann. 397 ; Richardson vs. Zuntz, 26 Ann. 313 ; 2 Sedgwick on Damages 661, and cases there cited.

In this case plaintiff was knocked senseless, his ear was cut in two, he received a severe gash on head, his face was mashed and bruised, and his leg severely sprained. After recovering consciousness, he was seized with vomiting, which continued for several hours. He was laid up for several days, suffering great pain and incurring expenses for board and medical treatment, and did not fully recover for some weeks.

It is absurd to consider this verdict of one hundred dollars as affording reparation for such injuries. Indeed, it would scantily compensate the trouble and expense of the law-suit which he was compelled to bring in order to vindicate his rights.

We think an addition of $500 to the verdict will mete out only moderate justice.

It is, therefore, ordered, adjudged and decreed, that the verdict and judgment appealed from be amended by increasing the principal sum from one hundred to six hundred dollars, and that, as thus amended, the same be now affirmed, defendant to pay costs of appeal,