MARY T. DOTSON ET AL., DEFENDANTS IN ERROR, v.
ERIE RAILROAD COMPANY, PLAINTIFF IN ERROR.

Argued December 8, 1902—Decided March 2, 1903.

1. A passenger at a railway station may lawfully use the platform
   or any part of it for the purpose of exit to and from the com-
   pany's trains, or for any other lawful purpose connected with his
   journey, but in order to maintain a liability against the company
   for injury received from passing trains, his use of such platform
   must be limited to the purposes for which it is manifestly adapted.
2. It is the duty of the company to so construct its platform that it
   shall be reasonably safe for use by passengers and to locate it in
   such proximity to the railroad tracks that it will afford a safe
   and convenient means of exit to and from its cars for its passen-
   gers, including those who may be aged and infirm.
3. While trains are passing such platform or are likely to pass,
   waiting passengers must keep such a distance from the edge of
   the platform next to the rail that they will not be struck by
   such projections as usually attach to ordinary trains. Under such
   circumstances the edge of the platform is usually a place of dan-
   ger, and if a passenger, while occupying such a place is struck
   in this way, the injury cannot ordinarily be attributed to negligent
   construction by the company.
4. In the present case the plaintiff was walking along the platform,
   which was on a level with the top of the rails, toward the station
   in order to purchase a ticket. She suddenly diverged in her course
   toward the rail, so that she was struck from behind by the bumper
   of a slowly-moving train just pulling into the station, on which
   she was to take passage, and was injured. The platform was
   constructed of crushed stone which extended to the line of plank-
   ing eighteen inches wide along the nearest rail. The trial judge
   treated the outer line of the stone surface as the edge of the plat-
   form. The evidence showed that the bumper projected slightly
   over the edge of the platform and it was left to the jury to say,
   in case they should find that plaintiff was walking within the line
   of the platform when she was struck, whether it was negligence
   in the company to have constructed its platform in such close
   proximity to the rail. It was held, on review, that no negligence
   was shown and that the charge in this respect was erroneous.

On error to the Supreme Court.

For the plaintiff in error, *Corbin & Corbin.*

For the defendants in error, *Warren Dixon.*

The opinion of the court was delivered by

HENDRICKSON, J.  This writ brings up for review a judgment of the Supreme Court entered upon a verdict rendered at the Bergen Circuit.  The defendants in error, who were the plaintiffs below, and are husband and wife, brought suit to recover damages for personal injuries to the wife resulting from her being struck by the bumper of a locomotive engine of the defendant company, at its station in Englewood, in the county of Bergen.  For convenience, I will hereafter refer to her as the plaintiff below.  The grounds of recovery averred in the pleadings were twofold: one was the negligent operation and management of the cars and locomotive of the defendant while running along the platform of the station, under the existing conditions, and the other was negligent construction of the platform, in locating it so near the tracks that its locomotive and cars would overlap the platform and strike passengers walking along the same, so that on the occasion referred to the plaintiff was struck by one of the defendant's locomotives while she was walking along the edge of the platform and was at the time in the exercise of due care. There were motions to nonsuit and to direct a verdict, on the ground that no negligence was proved and on the further ground of contributory negligence, which were overruled and exceptions were allowed and duly sealed.

The learned judge at the close of his charge directed the jury that in case they found a verdict for the plaintiff, they should find specially whether it was based upon the negligent construction of the platform or upon the negligence of the engineer in the management of his engine, or upon the negligence of both.  In returning their verdict for the plaintiffs, the jury based their finding upon negligent construction and not upon negligence on the part of the engineer.  Thus all questions relating to negligent management of the company's trains are eliminated from this discussion.

We may appropriately deal with the other questions under the exceptions taken to the charge of the court and to the refusal to direct a verdict.  Some facts should be stated to properly illustrate the situation.  The general direction of

the road at this point was north and south. The station was on the easterly side of the tracks, the westbound track being the nearer one to the station. The platform of the station was on a level with the top of the rails of the tracks. It consisted of flagging about the station, and then of crushed stone as it approached the track. Immediately along the rails was planking eighteen inches wide, and within the rails and between the two tracks the crushed stone continued, so that the whole was on a level from the station to the eastbound track, thus serving as a means of ingress and egress to and from the trains on either of the tracks. The platform is thus extended to the eastbound track for a space up and down the tracks in front of the station of three hundred feet. The whole platform is about six hundred and eighty-five feet long, and south of the station there is a driveway for carriages along the platform and four feet and a half below its level. The width of the platform at the station is about fifty feet, and at the south end of the station the rear line of the platform curves toward the tracks in a southerly direction until it is narrowed to a width of ten and seven-tenths feet, and then runs southwardly of the same width in rectangular form along the tracks a considerable distance.

The accident occurred September 3d, 1901, about seven thirty o'clock in the evening, and the place where it happened was well lighted by electric lights. The plaintiff came from the town and entered the platform not far from its southerly end, and was on her way to the station to buy a ticket to her home in Highwood, a station above. She had walked two or three hundred feet northwardly, and when she reached a point variously estimated at from fifty feet to two hundred feet from the station, she was struck by the bumper of the engine attached to the train she was about to take. It was moving slowly in the same direction she was walking, at the rate of three or four miles an hour, having slowed up to allow the eastbound train to pull out of the station ahead of it. The plaintiff was walking in about the centre of the platform until a few moments before she was struck, when she diverged in her course toward the rail. She testified that she

was crowded toward the rail by passengers who alighted from the down train, but the other witnesses, her own as well as the company's, showed that in this she was probably mistaken. But the fact is not material to the points to be discussed. The engineer, upon seeing her turn toward the rail, gave the danger signal and put on the emergency brake, but too late to avoid the striking of the plaintiff about the hip and throwing her down upon the platform, causing serious bruises and injuries. The bumper which struck the plaintiff is a square piece of timber rounded over at the ends to which the cowcatcher attaches, and it projects to the side far enough to cover the head of the cylinder which it is intended to protect.

The learned trial judge had charged the jury that if they found that if at the time the plaintiff was struck "she was upon the planking alongside of this railroad, then the verdict should be for the defendant, because it is evident, and must have been evident to every adult person, that that planking was not intended for persons to walk upon," &c. He had further charged that "if she were not upon the planking, but were upon the gravel walk or platform, as it is called, then the question for you to decide would be whether or not she was guilty of negligence in going so near as that to the rail under the circumstances of the case." It should be observed that there was no evidence in the case which characterized the platform as only extending to the planking next to the rail. Nor was there any evidence that the platform was not properly constructed, or that the planking was intended for a different use than the rest of the platform.

The trial court further charged that if the jury found upon both of these questions in favor of the plaintiff, then "Was it negligence in the company itself to have that gravel platform approach so near to the rail that passengers would be likely to be endangered, even if they exercised reasonable care in the use of the platform, and did this accident spring out of that kind of negligence on the part of the company? * * * Does the evidence satisfy you that the company failed to take proper care—and that means a high degree of care—for the safety of persons who came there as passengers when they

constructed that platform so close to the rails that there would be danger that persons in the prudent use of the platform would be struck by any part of the engine?" The jury was instructed that if they answered this question, as well as the previous questions, in favor of the plaintiff, then the verdict ought to be for the plaintiffs. Exception to these instructions were duly sealed, and error has been assigned thereon.

Even conceding for the present that the planking along the east rail was not a part of the platform and that the graveled or stone surface along the planking is to be regarded as the platform proper, we are unable to concur in the view that any actionable negligence is shown by reason of its proximity to the tracks. Admittedly it would then be a distance of eighteen inches from the nearest rail. The evidence was that the engine in question was similar to the other engines used on the road, and that the projection of the bumper was the same in all of them. The engineer testified that the bumper extends a trifle beyond the planks; he could not say how much; that the plaintiff must have been about on the edge of the plank farthest from the rail when she was struck; that the bumper, as the witness stated it, "just glanced her," knocking her off sideways. In order to sustain the theory of the charge it must be assumed, we think, that there is an implied invitation by the company to its passengers to stand upon any part of its platform, even at its very edge, when its trains are passing, and with it an obligation to exercise reasonable care for their safety when they may thus expose themselves to danger.

In order to sustain a claim of liability against the owner or occupier for the injury sustained in the use of his premises, where there is no express invitation, it must appear that there was an implied invitation—that is, that the person injured "entered the premises because he was led by the acts or conduct of the owner or occupier to believe that the premises were intended to be used' in the manner in which he used them, and that such use was not only acquiesced in, but was in accordance with the intention or design for which the way or place was adapted and prepared or allowed to be used."

*Sweeney* v. *Old Colony Railroad Co.,* 10 *Allen* 368; *Phillips* v. *Library Co.,* 26 *Vroom* 307; *Turess* v. *New York, Susquehanna and Western Railroad Co.,* 32 *Id.* 314.

Applying this test to the circumstances here involved, we must find that the plaintiff was using the extreme edge of the platform near the rail for a purpose entirely foreign to the intention and purpose of the company as to its use, and that there was no evidence to show that such a use was ever permitted or acquiesced in by the company.

It is undoubtedly a settled rule that a railroad company is under a duty to exercise ordinary and reasonable care to so construct and maintain station buildings, platforms and approaches that they shall be safe for use by passengers. *Ell. R. R.* 1590. But this use is to be exercised in conformity to the manifest purpose for which the structure in question is adapted.

And so a railroad company is only required to build platforms of sufficient dimensions to accommodate passengers getting on and off at their stations. *Harkey* v. *T. and P. Railway Co., Fed. Cas.* 6065; *Taylor* v. *Pennsylvania Railroad Co.,* 50 *Fed. Rep.* 755; *Moreland* v. *Boston, &c., Railroad Co.,* 141 *Mass.* 31; *Kelly* v. *Manhattan Railway Co.,* 112 *N. Y.* 443; *Lafflin* v. *Buffalo Railroad Co.,* 106 *Id.* 136. It is manifest that this duty requires the railroad company to construct its platforms sufficiently near to the rails that it will afford to passengers, including the aged and infirm, a safe exit to and from the trains. And it is a matter of common knowledge that in performing this duty the platforms along the best regulated railroads are built so near the rails that the projections from the engines and the cars will overlap to some extent the edge of the platform. While the extreme edge of the platform is perfectly safe for passengers when occupying it for the purpose to which it is manifestly adapted, it is a matter of common knowledge that it is a place of danger when occupied while trains are passing or are likely to pass. It is the plain duty of the passenger when not getting on or off a train, but while he may be waiting upon the platform or engaged in walking upon it, to keep such a dis-

tance from the edge of it next to the rail that he would be beyond the reach of the projections of ordinary trains. And the company is not liable for injury to a passenger who suffers himself to go beyond such a limit and is injured by a passing train.

It was held in *Chicago, Burlington and Quincy Railroad Co.* v. *Mahara,* 47 *Ill. App.* 208, that where a platform is wide enough to give room for safety, the fact that it is so built that the edge nearest the track cannot be safely occupied as a standing place while trains are passing is not negligence.

In *Matthews* v. *Pennsylvania Railroad Co.,* 148 *Pa. St.* 491, it was held that where a passenger waiting for a train at a station, the platform of which is properly constructed, stands so near the track as to be struck and killed by the bumper of a passing locomotive, the railroad company is not liable. See, also, *McGeehan* v. *Lehigh Valley Railroad Co.,* 149 *Id.* 188; *Pennsylvania Railroad Co.* v. *Bell,* 122 *Id.* 58.

It has also been held that a person has a right to walk on an elevated plank walk constructed by a railway company alongside of its track at a station for the use of passengers and the public, and to suppose himself in safety while occupying such walk *at a point beyond the projection of all ordinary trains;* and if he is injured by a brake which projected more than the ordinary distance the company is liable, &c., it being the duty to warn the passenger as against extraordinary projections. *Sullivan* v. *Vicksburg, S. and P. Railroad Co.,* 39 *La. Ann.* 800. Upon principles somewhat similar, it was held that where an accident occurred to a passenger by his falling into the opening between platform and car which had a width of from eleven and one-half to eighteen inches, the opening itself was not evidence of negligence. *Fox* v. *Mayor, &c., of New York,* 70 *Hun* 181.

Under similar circumstances the plaintiff, without having hold of the railing and without looking, stepped out and fell between car and platform. There was no proof that the platform was not constructed in the ordinary way, nor that the space was greater than the exigencies of business required. There was no evidence of any previous accident. *Held,* no evidence of negligence by the company and no basis for re-

covery. *Lafflin* v. *Buffalo, &c., Railroad Co.,* 106 *N. Y.* 136, 141.

There is another reason why we think the question of negligent construction should not have been left to the jury, and that is the entire absence of proof that the construction was faulty as not being in conformity to the usual mode of construction adopted by well-regulated railroads or otherwise. Negligence must be proved. As was said by Baron Bramwell in *Comman* v. *Eastern Counties Railroad Co.,* 4 *Hurlst. & N.* 781, "It is not enough to say there was some evidence; a scintilla of evidence or mere surmise that there may have been negligence on the part of the defendant clearly would not justify the judge in leaving the case to the jury; there must be evidence on which they might reasonably and properly conclude there was negligence." To the like effect is the decision in *Cadwell* v. *Arnheim,* 152 *N. Y.* 182, 190. See, also, *Rigg* v. *Manchester, &c., Railway Co.,* 12 *Jur.* (*N. S.*) 525.

There was also error in that part of the charge which assumes, without proof, as we think, that the platform stopped at the edge of the graveled surface where it meets the planking along the rail, and was not, as it seems from the facts developed, to be only a part of one construction which served as a platform for trains on both of the tracks. Such a designation by the court would lead the jury to assume without evidence that the company had fixed the danger line at that point eighteen inches from the rail, and thus enlarged to a degree the company's liability for the safety of the passenger.

We also think that, so far as the question of faulty construction of the platform is concerned, a verdict should have been directed for the defendant.

The result is that the judgment below should be reversed and a *venire de novo* issued.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, FORT, GARRETSON, HENDRICKSON, PITNEY, VREDENBURGH, VOORHEES, VROOM.   10.