SAMUEL LARAGAY, PLAINTIFF IN ERROR, v. EAST JERSEY PIPE COMPANY, DEFENDANT IN ERROR.

Argued November 25, 1908—Decided March 1, 1909.

1. A derrick that leaned away from a nearby building at an angle of ten degrees was held in that position by its own weight and by a guy rope that ran to such building.  At the apex of the derrick a pulley was suspended through which ran a rope one end of which was fastened to an iron plunger weighing five hundred pounds that stood between the two feet of the derrick; the other end of the rope was held by the plaintiff and other workmen standing between the derrick and the building.  When traction was made on this rope in order to draw up the plunger the frame toppled over towards the building and fell on the plaintiff.  *Held,* that whether or not this result was so obvious that it ought to have been foreseen by the plaintiff was a question of fact to be left to the jury.

2. In determining whether or not a risk is obvious in a legal sense the question as to the impression that would be made on the mind of a reasonably prudent man by a congeries of concurrent circumstances is normally one for the jury, and always so when from such circumstances opposite inferences might in reason be drawn by different minds.

3. An *employment is common to the servants of the same master* within the meaning of the "fellow-servant rule" when it is performed as part of the duty owed by them to the common master by virtue of their employment as servants; hence the "fellow-servant rule" has no application where the duty is one that is owing by the master to his servants.  The test is not what agents

the master employed to perform a certain duty, but whether the duty itself was one that he owed to his servants or one that they owed to him.

4. If a master owe to his servants a duty that involves the exercise by him of reasonable care he cannot escape liability for its negligent fulfillment by delegating its performance to one or more of the class to whom such duty is owing; in such case, if the servants employed to perform the master's duty failed to exercise reasonable care in its performance, the master is legally chargeable with the fault.

5. Where the duty of the master is to exercise reasonable care that the place provided by him shall be a reasonably safe one for his servant to work, judicial decisions made in cases where accidents have occurred in the course of construction, or in the so-called "scaffolding cases," have no application.

6. A workman who, in obedience to the orders of his superior, engages in some other than his regular employment, is not on that account to be deemed a mere volunteer to whom the duty of exercising reasonable care is not owing.

On error to the Supreme Court, whose opinion is reported in 47 *Vroom* 194.

For the plaintiff in error, *Ward & McGinnis.*

For the defendant in error, *Lindabury, Depue & Faulks.*

The opinion of the court was delivered by

GARRISON, J. The plaintiff brought his action in the Circuit Court to recover damages for personal injuries received by the fall of a derrick. Plaintiff was the servant of the defendant, and the gravamen of his action is that the master did not exercise reasonable care to render the appliance and the place at which he set the plaintiff to work reasonably safe. At the trial there being a sharp conflict in the testimony as to the manner in which the fall of the derrick came about, the trial court denied the defendant's motions for a nonsuit and a direction of a verdict, and submitted to the jury the conflicting testimony in a charge that was legally unexceptionable. Under the charge the verdict of the jury both as to the negligence of the defendant and as to the plaintiff's assumption of obvious risk was adverse to the defendant who after judgment took

his writ of error out of the Supreme Court.   In the Supreme
Court the judgment of the Circuit Court was reversed upon
three grounds—*first,* that the plaintiff assumed an obvious
risk; *second,* that the plaintiff was injured by the negligence
of a fellow-servant; and *third,* that the defendant had fur-
nished proper materials, and hence was free from negligence.
The conclusion reached was that the plaintiff should have been
nonsuited, and therefore that the judgment based on the ver-
dict of the jury should be reversed.

The legal propriety of the judgment of the Supreme Court,
which is now before us upon error, is to be determined with
reference to an established state of facts which may be re-
garded either as the facts established by the verdict of the jury
or as those that the trial court dealt with on the motions made
by the defendant.   It comes to one and the same thing since
in either case the only testimony to be regarded is that which
makes for the plaintiff which cannot be questioned when chal-
lenged on matter of law.   *Hayward* v. *New Jersey Street Rail-
way Co.,* 45 *Vroom* 678.

The case thus constituted is as follows:   The defendant, a
manufacturer of iron, had made for an inventor some steel
spiling, the driving of which was to be tested at the defend-
ant's plant.   For this test a spile driver was constructed from
the top of which a heavy weight might be dropped on the
spiles.   This contrivance was in effect a frame in outline like
the letter A, composed of two heavy timbers twenty-five feet
long set wide apart at the base where they rested on the
ground, the topmost ends being brought together to an apex
and there bolted.   From this apex a block or pulley was sus-
pended through which a rope ran that was to lift an iron
driver weighing approximately five hundred pounds.   This
frame was set up about forty feet from the factory building
from which ran a guy rope that held the frame in position
by allowing it to lean away from the building at an angle of
about ten degrees.   There was no other guy rope.   The
plaintiff, who was a boilermaker and riveter, working inside
the factory, had nothing whatsoever to do with the construc-
tion of this appliance; but was on the forenoon of the day

after its erection ordered to help throw out the sheet spiling; and after the dinner hour of the same day he received orders from his boss "to help the men drive those spiles." In obedience to this order plaintiff went out to the place where the spiles were to be driven, and after the boss had fastened the rope to the weight which was "right between the two feet of the spile driver," the plaintiff in company with half a dozen other workmen took hold of the end of the rope that was to raise the weight, standing for that purpose between the frame and the building, and when the boss gave the signal, "haul away, haul away," the men pulled on the rope with the result that instead of the weight being lifted the frame toppled over and fell towards them catching the plaintiff under one of its timbers.

Upon this version of the accident which supports the verdict, and is the one the trial court was obliged to accept upon the motion to nonsuit, I cannot agree that it so conclusively appeared that the risk was or ought to have been obvious to the plaintiff that he should have been nonsuited. It did not appear to have been obvious either to the boss who was directing the operation or to the other workmen engaged in it, and this circumstance alone raises some question as to its being, beyond a jury question, a plainly obvious risk. The problem presented was essentially one of physics, the factors of which were the height of the frame, its weight, the angle at which it leaned from the building, the direction from which traction was exerted, the weight of the driver, its relative weight to that of the frame, and its location with reference to a line dropped perpendicularly from its apex. No doubt with these factors accurately ascertained a mathematically correct resultant of the various forces involved could be worked out, although it may be open to doubt whether the plaintiff could have done it. This, however, is a very different thing from saying that it conclusively appeared that these factors when casually observed ought so clearly to suggest to one in the plaintiff's station the risk of doing what he was ordered to do that he must be deemed to have voluntarily assumed the dangers that would result from his obedience. On the con-

trary, the rule is that the question as to the impression that
would naturally be made upon the mind of a reasonably pru-
dent man of ordinary intelligence by a congeries of concurrent
circumstances is normally for the jury and not for the court.
Indeed, the facts of the present case make it peculiarly one
that calls for the judgment of practical men of various walks
of life rather than that of specialists in the law.   To such a
case we may aptly apply the rule that it is immaterial what
inference the judge draws from the testimony if the opposite
inference might in reason be drawn from it by the jury.
*Mumma v. Easton and Amboy Railroad Co., 44 Vroom* 653.

The present case was one in which the jury in reason
might, and in fact did, infer that the risk was not so obvious
that the plaintiff ought to have anticipated it.   The trial
judge correctly apprehended the true rule when he refused to
take this question from the jury.   We cannot therefore agree
that his ruling in this respect was legally erroneous.

The opinion of the Supreme Court was filed on February
24th, 1908, and is reported in 47 *Vroom* 194.   In volume 68
*Atl. Rep.*, on page 725, is reported the case of Smith *v.*
Kenyon, decided February 3d, 1908, in which the Supreme
Court of Rhode Island had before it a case that is indis-
tinguishable from the present case.   The syllabus of the
Rhode Island decision is:   "That a derrick was laterally im-
movable, its arm excessively long, the area of the foundation
restricted, the derrick dependent upon a single guy rope, and
that all of its physical features were visible, does not show
as a matter of law that the defects causing the derrick to fall,
resulting in the fatal injury of a carpenter, must have been
obvious to him, and so assumed by him among the risks of
his occupation."   This, we think, places the matter on its cor-
rect legal footing.

The second ground upon which the Supreme Court places
its judgment, viz., that the negligence found by the jury was
that of the fellow-servants of the plaintiff for which the master
was not liable, rests upon a misconception of the nature of
that common employment that is the foundation of the
"fellow-servant rule."   An employment is common to the ser-

vants of the same master within the meaning of this rule when it is performed as part of the duty owed by them to the common master by virtue of their employment as servants, hence such rule is wholly without application where the duty that is to be performed is, on the contrary, one that is owing by the master to his servants. When a master thus owes a duty to his servants it is immaterial what agency he may employ for its performance, it remains his duty and he cannot escape liability for its negligent fulfillment by delegating its performance to one or more of the very class to whom such duty is owing. The test is not what agents did the master employ in the performance of a given duty, but whether the duty itself was one that he owed to his servants or one that they owed to him. It is established law in this state, and very generally elsewhere, that if a master owe to his servants a duty that involves the exercise by him of reasonable care, and he employs his servants to perform this duty for him and they or some of them fail to exercise reasonable care in its performance the master is legally chargeable with the fault. *Steamship Company* v. *Ingebregsten,* 28 *Vroom* 400; *Van Steenburgh* v. *Thornton,* 29 *Id.* 160; *Hustis* v. *Banister Company,* 34 *Id.* 465.

In the present case the servant was directed to work at a place appointed and upon an appliance provided by the master, hence the latter owed to the former the duty of exercising reasonable care that such place and such appliance should be reasonably safe with reference to the work in which the servant was ordered to take part. In the performance of the duty thus owing to the plaintiff, the defendant, which was a corporation, employed certain other of its servants who, at least so the jury might find, negligently performed the master's duty so that reasonable care for the plaintiff's safety was not in fact exercised. To such a case the fellow-servant rule has no application. The trial court could not properly have directed a nonsuit on this ground.

The third ground on which the Supreme Court placed its judgment, viz., that the master was not liable if he had furnished suitable materials for the proper construction of the

frame involves a misapprehension of the gravamen of the plaintiff's action, which was that the defendant negligently performed its duty of exercising reasonable care that the place provided by it for the plaintiff's work should be reasonably safe in view of the special appliance there furnished by the master for that purpose.

*McLaughlin* v. *Camden Iron Works,* 31 *Vroom* 557, which is twice cited in the opinion of the court below, and is in fact the only authority it cites, well illustrates a class of cases with which the present case has nothing in common.

In the McLaughlin case the master was constructing a roof supported by timbered frames. A servant took part in the work of erecting these frames and was injured by the fall of one of them occasioned by the failure of those engaged with him in the operation to make proper use of the materials furnished by the master. It was properly held that all who were engaged in the operation were fellow-servants and that the master was not chargeable for the result of their failure to make proper use of the materials he had furnished. The clear distinction between that case and this is that McLaughlin was engaged in the erection of a frame that fell because in the performance of their duty the servants did not make use of the materials the master had furnished; whereas in the case in hand the plaintiff was set to work at a place which consisted of an already constructed appliance furnished by the master as the place where the servant should work.

Cases arising from accidents during construction have therefore no bearing upon the present case. For a like reason the present case has nothing in common with the so-called "scaffolding cases," in which the essential feature is that the construction of such working-stands is a component part of the servant's duty in the performance of which the plaintiff and his fellows engaged as part of their common employment.

It cannot be successfully contended that the plaintiff was a mere volunteer. He was ordered by his superior to do what he did. The notion that it is within the legal rights of a workman to challenge the authority of his superior to order him to leave his regular line of employment to lend a hand at

some other work in an emergency is fanciful in the extreme. As a practical matter the first exercise of such supposed right would be its last. A legal right, the exercise of which is destructive of the very right it is invoked to conserve, must occupy small space in any system of practical jurisprudence. A workman, who, in obedience to the orders of his superior, engages in some other than his regular employment, is not on that account to be deemed a mere volunteer, to whom the duty of exercising reasonable care is not owing.

Reaching the conclusion that the plaintiff should not have been nonsuited or have had a verdict directed against him, and that the charge of the trial court discloses no error, the judgment of the Supreme Court is reversed and the judgment of the Passaic County Circuit Court is affirmed.

*For affirmance*—SWAYZE, DILL, J.J.   2.

*For reversal*—THE CHANCELLOR, GARRISON, REED, TREN-CHARD, PARKER, VOORHEES, MINTURN, BOGERT, VREDEN-BURGH, GRAY, J.J.   10.