CHARLES E. MAHER, PLAINTIFF IN ERROR, v. FERRACUTE MACHINE COMPANY, DEFENDANT IN ERROR.

Submitted March 25, 1912—Decided June 20, 1912.

The plaintiff and his witnesses, being mechanics of experience, having testified that in the exercise of reasonable care in the ordinary use of a tool by the plaintiff, an employe in defendant's business, a defect which caused injury to the plaintiff could not be observed, it was error upon the part of the trial court to direct a verdict for the defendant, since the contradiction of that proof by defendant presented an issue of fact for the jury.

On error to the Supreme Court.

For the plaintiff in error, *Martin V. Bergen, Jr.*

For the defendant in error, *Gaskill & Gaskill.*

The opinion of the court was delivered by

MINTURN, J. At the trial in the circuit the court directed a verdict for the defendant, and the only question presented to us is whether upon the following state of facts a question of fact and not a question of law was presented.

The plaintiff, a machinist of experience, was employed by defendant company at his trade in defendant's shop at Bridgeton, where it conducted the business of manufacturing presses and sheet metal tools. While thus engaged the plaintiff was injured by the centre hole of a reamer abruptly leaving the centre point of the machine, catching his hand and causing the permanent loss of the first and second fingers of his left hand. At the time of the injury, plaintiff was engaged in reaming a hole already cut in an iron piece. The reamer which he was using was about three feet long and weighed between sixteen and eighteen pounds. It was used as a finishing tool, upon a lathe, to smooth out holes previously bored in steel by coarser instruments. Its head consisted of cutting blades about three inches in length, set on what is called the shank of the reamer, which is about one and three-quarter inches in diameter. In its centre, at the end is bored a hole, called the back centre, having an apex angle of sixty degrees, and which in this instance was three-sixteenths of an inch in depth. The lathe upon which it rested was about ten feet long and stationary. It rested upon two uprights, to which upon the inside, the object to be reamed is fastened, in a fixture which revolves during the reaming process. A movable pin projects through the other upright, and this pin tapers to a point of sixty degrees, and is moved in and out by a wheel at the back of the upright, but does not revolve.

When the object is ready to be reamed, the machinist places the head of the reamer into the bored hole, and turns the wheel in the upright, which results in moving forward the pin until it is inserted in the reamer, each being sixty degrees, and the complement of the other. Fastened to the centre of the reamer is what is called a dog, the object of which is to prevent the reamer from suddenly losing its place by the roughness of the metal in the bored hole, and also to prevent it from revolving with the metal being bored. When the reamer is put on the lathe for use, its back centre and its side are hidden from view.

The machinist in performing his work, rests his right hand upon the centre of the wheel and his left upon the dog, the object being to keep pushing on the wheel at the centre point and thus push the reamer forward, to enable it to do its work.

While this plaintiff was so engaged, the reamer sprang from its place in the metal it was intended to finish, and injured the plaintiff in the manner stated.

For the purpose of properly operating the establishment, the defendant maintained a separate tool -room, and men whose specific duty it was to keep the tools, including the reamers, in proper condition. The men using the tools secure them at this room upon application, and the plaintiff upon the day preceding the accident, secured his reamer in that manner. It was in evidence that the plaintiff used this reamer the day before, and the day of the accident, without perceiving any defect in it; that the foreman and other employes had used the reamer upon many occasions without observing its defect, and two expert machinists testified that the defect in the reamer could not have been observed in the ordinary use of the tool.

After the accident, one of the witnesses, an experienced machinist, measured the centre hole and testified that he found it three-sixteenths of an inch deep, and that in his judgment to be reasonably safe for the use of the reamer, it should have been from a quarter to five-sixteenths in diameter across the face and sixty degrees countersunk, which would make it from three-eighths to seven-sixteenths deep. He was then asked:

"*Q.* Therefore, in your opinion, if this reamer had a hole, if this centre hole in this reamer was three-sixteenths of an inch deep, would that reamer be safe or not?

"*A.* I should think not; no, sir."

Other qualified witnesses testified to the same effect.

There was ample testimony of this character in support of the plaintiff's claim that the reamer was unsafe, and that the plaintiff did not and could not in the exercise of ordinary care and observation in the manipulation of the tool discover its defect.

A contradiction of these contentions by the defendant and its witnesses, presented a question of fact for the jury, for concededly the duty imposed by law upon the servant, under his contract of service, is to assume such risks only as are obvious, or such as could be obvious to him in the exercise of reasonable care. *Carroll* v. *Tidewater Oil Co.*, 38 *Vroom* 679.

The case in this aspect presents a situation not unlike that presented in *Pankow* v. *Swift & Co.*, 49 *Vroom* 532, where a machine, without any apparent reason, tore loose from the floor to which it seemed to be secured, and shortly after it had been repaired upon the complaint of the plaintiff, and this court held that the question whether or not the risk was obvious was a fact question for the consideration of the jury. See also *Steamship Co.* v. *Ingebregsten*, 28 *Id.* 403, where the relative duties of the parties in a situation like the present are declared, in an opinion by Mr. Justice Dixon, speaking for this court.

*Laragay* v. *East Jersey Pipe Co.*, 48 *Vroom* 516, furnishes a practical illustration of the application of this rule. Mr. Justice Garrison, speaking for this court, there says:

"In determining whether or not a risk is obvious in a legal sense, the question as to the impression that would be made on the mind of a reasonably prudent man by the congeries of concurrent circumstances is normally one for the jury, and always so when from such circumstances opposite inferences might in reason be drawn by different minds.

Tested by this rule, it cannot be said, as matter of law, in view of the testimony in this case in behalf of the plaintiff, that the defect in the reamer could be discovered in its ordinary use by the servant, and that the defect and incident danger were of such a palpable nature as necessarily to be obvious to the plaintiff. The contention of the plaintiff, a mechanic of experience, supported by capable witnesses, was that the defect in the reamer was not obvious, and hence that he therefore did not assume it. The fact that this contention is offset by the defendant's denial, and competent testimony to support the denial, evolved not a question of law upon the

decision of which the court may determine the obviousness of the risk, but presented essentially a jury question.

The judgment under review will be reversed.

*For affirmance*—THE CHIEF JUSTICE, PARKER, VOORHEES, WHITE, TREACY, JJ.   5.

*For reversal*—GARRISON, SWAYZE, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, JJ.   9.