LUCIUS M. MUNROE, EXECUTOR, &c., APPELLANT, v. THE PENNSYLVANIA RAILROAD COMPANY, RESPONDENT.

Submitted December 8, 1913—Decided March 16, 1914.

The deceased was waiting at the Elizabeth station, with friends, at eleven-thirty at night for a train to New York, due to arrive after twelve midnight. Without notice of any kind, a belated express train dashed by at the rate of a mile a minute, creating a suction which drew the deceased along the platform and towards the train, so that he fell and received injuries from which he died. *Held,* that the question whether the deceased by standing within three feet of the edge of the platform at the time the train approached, was guilty of contributory negligence, was a question of fact for the jury, and that a nonsuit directed upon such ground was erroneous.

On appeal from the Circuit Court.

For the plaintiff, *Horace C. Grice.*

For the defendant, *Vredenburgh, Wall & Carey.*

The opinion of the court was delivered by

MINTURN, J. The judgment of nonsuit was directed at the Circuit upon the following facts: The plaintiff's de-

cedent, Lewis C. Greene, while waiting at the station at Elizabeth, on the night of June 1st, 1911, for a New York train, was injured by the "federal express," running an hour behind its schedule time, and passing the station at the rate of a mile a minute. The accident occurred after half-past eleven at night, while the deceased, with his wife, son and others, who were returning from a wedding function at Elizabeth, were waiting for a train due to arrive there at four minutes past twelve.

The deceased occupied his time conversing with other members of the party, and stood about three feet back from the edge of the platform. There are four elevated tracks at the station, and a short distance therefrom these tracks describe a curve of about one thousand feet, measured on the rail from a point at the north where it meets the straight track, to the point on the south where it converges and again meets the straight track.

In this situation the "federal express," without warning of any kind suddenly reached the vicinity of the platform, where the deceased was standing; and the situation which its presence under those circumstances produced is described by Dr. Iler, one of the witnesses: "Now, when I yelled, it seemed to me momentary when the train whizzed by. I saw one or two jump back; I couldn't say either one or two, but one in particular jumped back as though he was in danger; he put his hands up to his hat, and with a twisting motion always towards me. I had got about the middle of the waiting room and I saw his body come whirling toward me. He seemed to be going in toward the train. Thinking he was caught in the suction of the train, I ran toward him. Just before reaching him, at a point south of the waiting room, his body seemed to collapse and shoot along the platform with the force of a catapult. Thinking that he had lost control of his body and the suction force of the wind drawing him in toward the train, I threw myself on his body to hold him there, so that he wouldn't be drawn in under the wheels; that was the thing in my mind. I know I was exceedingly close to the train, and my hat was taken away, my coat was thrown

690     COURT OF ERRORS AND APPEALS.

Munroe v. Penna. R. R. Co.          85 N. J. L.

up over my head, and I lay there until after the train went by on his body, and then, throwing down my coat, I saw who the man was. He did not seem to breathe, and I ran my hand up under his coat. There was a trickle of blood out from under the skull, and the man to all appearances was dead."

The deceased was not drawn under the train as a result of the suction, nor so far as any witness could testify did anything strike him. The effect of the medical testimony was that the skull was fractured and a large section of the bone was gone, as the result of a blow sufficient to force the man's skull asunder, and to lacerate and destroy a large area of the brain, and cause a violent hemorrhage.

The plaintiff's witnesses testified that no warning whatever was given of the approach of the train. One witness testified that all he heard in the way of warning of the approaching train was a "whining" and a "buzzing," and the roar of its approach, and then it seemed to him it was close at the station, and this caused him and another passenger to shout "Look out!" But other than that it appears there was an absence of all warning of bell, whistle or guard. While the declaration counted upon that fact as evidence of negligence, no small part of the trial was occupied with testimony designed to show the comparative dimensions, and the proper construction of the station platform, with the view of showing contributory negligence upon the part of the deceased by reason of the fact that every other avenue of criticism against the defendant being closed, excepting that of actually warning the deceased of his danger, he had by standing in an exposed location invited the accident that caused his death. The learned trial judge applied that theory as the basis for the judgment of nonsuit.

The question for consideration thus resolves itself into the inquiry whether under the circumstances narrated a person so situated as was this decedent, can be said to be so clearly guilty of contributory negligence that as a matter of law he is debarred by his conduct from recovery. In this inquiry we assume that the defendant may be said, under the circumstances, to be guilty of negligence, or to state the proposition in

another form, that there was in the case sufficient evidence to warrant the trial court in submitting the question of defendant's negligence to the jury, if the contributory negligence of the deceased had not supervened so clearly and definitely as to make his guilt manifest and indubitable as a matter of law.

The test of generic duty imposed by law upon the defendant, under such circumstances, was to exercise reasonable foresight for harm. *Kingsley* v. *Delaware, Lackawanna and Western Railroad,* 52 *Vroom* 541.

The specific duty imposed by law under the circumstances was to give reasonable warning to persons lawfully on the platform of the approach of a belated train, traveling at a high rate of speed. *Sm. Neg.* 125; *Hay Imp. Duties* 18; *Dotson* v. *Erie Railroad,* 39 *Vroom* 679; *Exton* v. *Central Railroad,* 33 *Id.* 7; *Dobiecki* v. *Sharp,* 88 *N. Y.* 203.

The legal obligation upon the part of defendant to exercise due care being the measure of its duty, the jury were entitled to determine whether under the circumstances of the case the defendant's conduct was consistent with that legal requirement. The only barrier to the exercise of that power by the jury, the defendant insists, was the palpably plain evidence of contributory negligence upon the part of the deceased.

This insistence leads to the inquiry whether the situation in which the deceased found himself, upon the platform at the time of the accident, can be characterized by the court as negligent as a matter of law.

We think that it cannot be said as a matter of law that it was *ipso facto* negligent for the deceased to walk within three feet of the edge of the platform, unless there was something inherently or obviously dangerous in that situation, and which to the ordinarily prudent man must beyond peradventure have so appeared.

The negligence of such an act it must be apparent is entirely relative. Under certain circumstances and situations it might be clearly foolhardy and extremely negligent, but whether it is so in any given case, where the danger is neither obvious nor apparently existent, presents a question of fact

into which must enter for the consideration of the jury, all the details and minutiæ of the environment, which throw light upon the situation, and the conduct of the deceased.

The question of contributory negligence is thus placed in the realm of uncertainty and doubt, and when it assumes that complexion and presents the form of a debatable question, the authorities are uniform that to the jury is committed the solution of the inquiry. *Pennsylvania Railroad* v. *Righter,* 13 *Vroom* 180; *McCool* v. *West Jersey, &c., Railroad Co.,* 52 *Id.* 479; *Napodensky* v. *West Jersey, &c., Railroad Co.,* *ante p.* 336; *Maher* v. *Ferracute Co.,* 54 *Vroom* 575.

The views we have thus expressed are dispositive of the legal principles upon which liability must be determined, and we therefore find it unnecessary to consider the other questions raised in the brief of counsel.

The judgment of nonsuit will be reversed. A *venire de novo* may issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ.     13.