## SCHULTZ v. ERIE R. CO.
### No. 4463.

Circuit Court of Appeals, Third Circuit.
Jan. 9, 1931.

Charles G. Notari, Thomas M. Marshall, and Marshall & Marshall, all of Pittsburgh, Pa., for appellant.

Albert L. Thomas, of Meadville, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below John E. Schultz, hereafter called plaintiff, brought suit against Erie Railroad Company, hereafter called defendant, to recover damages for personal injury inflicted on him by the alleged negligence of defendant while operating a train. After hearing plaintiff's proofs, the trial judge granted a compulsory nonsuit on two grounds, first, that plaintiff was guilty of contributory negligence; and, second, that there was no proof of negligence of defendant. On its refusal to take off such nonsuit, this appeal was taken, and the questions here involved are, was the court justified in adjudging plaintiff guilty of contributory negligence? and, if not, were the proofs such as to require the question of submission to the jury of the question of defendant's negligence?

Turning to the proofs, it appears that plaintiff, a pedestrian, came along Kenton avenue, in the city of Marion, Ohio, to a railroad crossing. He crossed two tracks belonging to the Big Four Railroad, a company which has no interest and whose tracks have no bearing on the case. The defendant had three tracks beyond, on one of which its freight train was then passing at "about ten miles per hour or better." The proof is that plaintiff stopped and stood on the boardwalk of the crossing and on a track of the other railroad. In that regard the evidence was:

"Q. And you say you stopped shortly before you reached the tracks? A. Yes, sir.

"Q. About how far from the tracks? A. Well, right at the edge of the sidewalk, on this public highway, right at the edge of the sidewalk on the private walk, like the edge of the sidewalk here.

"Q. You were on the sidewalk, but how close to the railroad track? A. About five feet.

"Q. That is, from the first track? A. The first track; yes, sir.

"Q. How long did you remain standing there? A. Until the watchman yelled or hollered, give us the signal to advance, because the freight was close then.  *  *  *

"Q. And when you advanced, how far did you say—You say you went to the center of the second Big Four track? A. Yes, sir.

"Q. You are positive about that? A. Yes, sir.

"Q. And what happened then? A. Well, I heard someone approaching on the walk; I happened to glance to my right, and the more I glanced, all of a sudden I was gripped, the left side of my sheepskin coat, knocked off my feet alongside the car, and dragged on down the tracks.  *  *  *

"Q. You are quite positive about the wire or thing that caught you, are you? A. Very positive, yes, sir, because I struggled to clear myself from it.

"Q. And I believe you said you climbed up that wire? A. While I was being dragged, I was pulling myself up.

"Q. You mean, hand over hand? A. Yes, sir; just as much as I possibly could, because the wire had me here (indicating), and I was this way, pulling myself up.

"Q. Did you get up off the ground, your feet off the ground? A. No, sir.

"Q. Then you merely mean you were holding onto the wire? A. I wasn't holding on, I was struggling to free myself, to get away from that grasp.

"Q. Was this wire looped around you? A. No, sir, just the sharp prongs of that wire caught me here (indicating), by my sheepskin coat, just like I gripped myself, like this (indicating)."

Was plaintiff guilty of contributory negligence in so standing while the freight train was passing? In that regard the court below held that "plaintiff's testimony indicates contributory negligence on his part. From a position of safety beside the crossing, he placed himself in danger upon the tracks in proximity to the moving train." Without discussing the question whether his so standing was evidence of contributory negligence, certain it is that, if so, the question under the facts of this case was one for a jury, not the judge, to determine.

It remains to consider whether there was evidence from which reasonable men could properly infer the railroad was negligent. The proof was that what caught the plaintiff was the loose, swinging end of a twisted steel rope or tie-rod used for keeping loads rigid on low or gondola cars. The train had come two hundred and eighty miles to Manifest, a station a mile distant from Marion. At Manifest it was placed in charge of another crew. The conductor from the latter point was called by the plaintiff and questioned as to the make-up and operation of the train. He gave no evidence bearing on inspection or of any unusual strain to which the train had been subjected.

The railroad contends there is nothing in the case but the mere fact of an injury inflicted, and therefore the jury could not infer negligence. But such is not the case. We have here a pedestrian at a public crossing. As the rear end of a slowly passing freight train reaches the crossing, the watchman signals the people standing to come on. The plaintiff does so, and stops on the side-walk five feet back from the defendant's track. Standing there, he is caught, held, and drawn under the train by a steel tie-rod swinging from the side of a car. Under these proofs we have a situation in which an ordinary freight train, properly conditioned, would not inflict injury on a waiting crosser. But, instead of the passing train being in proper shape, the gondola car had fastened to its side a loose, swinging steel rope, long enough not only to reach the pedestrian but to swing about him and drag him. The facts were such as were in view by the Circuit Court of Appeals of the Second Circuit, where in Smith v. Pennsylvania R. Co., 239 F. 103, 104, it said:

"Before, however, any defendant is called upon to explain how (e. g.) an injury was received, there must be facts proved affirmatively showing a surrounding situation which in ordinary course would not permit or produce injury, and also that something under defendant's control did notwithstanding inflict the injury complained of. With proof in this shape, the jury may infer negligence from the occurrence of the injury."

The tie-rod was put on the freight car by the railroad. Such rods were needed only when the carload required load holding, and, when not needed, prudence would seem to suggest they be unfastened and removed from it instead of the loosened end being left free, and, of course, if the rod was broken, all the more call for removing the shortened end. It will thus be seen that the present situation was not the sudden and unlooked for breaking of some part of a car at the time and place of the injury, such as was the fact in Bradley v. L. S. & M. S. R. Co., 238 Pa. 318, 86 A. 200, 44 L. R. A. (N. S.) 1148, and cases of that kind, but was one of a steel rope, attached by the railroad at one end to the car and its loose end becoming free to swing over the car side with a length that made it a menace to those within proper distance of a car properly equipped. Without discussing the many cases where kindred situations have been adjudged sufficient evidence of negligence to carry a case to a jury, we limit ourselves to saying we hold the proofs in the present case were such as made the issue of negligence one for a jury. Accordingly, the nonsuit below is vacated and the cause remanded for procedure in due course.