**TOMPKINS v. ERIE R. CO.**

**No. 307.**

Circuit Court of Appeals, Second Circuit.

June 7, 1937.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Theodore Kiendl, Harold W. Bissell, and L. Ray Glass, all of New York City, of counsel), for appellant.

Bernard G. Nemeroff, of New York City (G. Everett Hunt and William G. Walsh, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

This action was brought to recover damages for personal injuries sustained by the plaintiff when hit by a moving freight train as he was walking along the defendant's right of way. At the conclusion of the evidence the defendant moved to dismiss for failure of proof of actionable negligence on the part of the defendant and for affirmative proof of contributory negligence on the part of the plaintiff. A denial of this motion is the error chiefly relied upon for reversal of the plaintiff's judgment.

The accident happened about 2:30 a. m. on July 27, 1934, as the plaintiff was proceeding to his home on Hughes street, in Hughestown, Pa. Hughes street is a stub-end street ending at the westerly side of the railroad right of way. The next street to the south is Rock street which crosses the single line track at grade. The plaintiff alighted from a friend's automobile at the Rock street crossing and walked along a beaten pathway that runs in a northerly direction adjacent and parallel

to the railroad track for about 115 feet, where it intersects a diagonal path leading out of Hughes street and across the track. The defendant's freight train approached from the direction in which the plaintiff was walking. He heard it whistle for the Rock street crossing, saw its headlight as it rounded the curve ahead, and continued to walk toward it. He says it was traveling 30 or 35 miles an hour. The train crew testified to a speed of 8 or 10 miles an hour. The pathway upon which the plaintiff walked is approximately 2 feet wide and runs along about 2 feet from the ends of the ties, although in some places it is less. The locomotive extended more than a foot beyond the ends of the ties and the widest car overhung them one foot and five inches. Tompkins himself testified that the distance between his body and the moving train was between one and two feet. The night was dark and there was no artificial light. When he had almost reached the intersection of the two paths the engine passed him, and just as he got to the intersection "a black object that looked like a door" loomed up in front. Before he could even raise his hands, he was struck on the head and thrown to the ground in such a way that his right arm came under the wheels of the train. He believes the black object to have been a swinging door on a refrigerator car and says it projected from the side of the train two or two and a half feet. There was no witness to the accident other than the plaintiff, but much testimony was introduced with respect to the exact location of the paths, the long period of years during which the residents of Hughestown had been accustomed to use them, and the character of the ground lying between the longitudinal path and the fence marking the west boundary of the railroad right of way.

The defendant contends, citing Falchetti v. Pennsylvania R. Co., 307 Pa. 203, 160 A. 859; Koontz v. Baltimore & O. R. Co., 309 Pa. 122, 163 A. 212, that the only duty owed to the plaintiff was to refrain from willful or wanton injury because the courts of Pennsylvania have so ruled with respect to persons using a customary longitudinal path, as distinguished from a path crossing the track. The plaintiff denies that such is the local law, but we need not go into this matter since the defendant concedes that the great weight of authority in other states is to the contrary. This concession is fatal to its contention, for upon ques-

tions of general law the federal courts are free, in absence of a local statute, to exercise their independent judgment as to what the law is; and it is well settled that the question of the responsibility of a railroad for injuries caused by its servants is one of general law. Baltimore & O. Railroad Co. v. Baugh, 149 U.S. 368, 13 S.Ct. 914, 37 L.Ed. 772; Cole v. Pennsylvania R. Co., 43 F.(2d) 953, 71 A.L.R. 1096 (C.C.A. 2), and cases cited therein; Redfield v. New York Cent. R. Co., 83 F.(2d) 62, 65 (C.C.A.8).

Where the public has made open and notorious use of a railroad right of way for a long period of time and without objection, the company owes to persons on such permissive pathway a duty of care in the operation of its trains. Southern Ry. Co. v. Cochran, 29 F.(2d) 206 (C.C.A.5); New York, N. H. & H. R. Co. v. Kmetz, 193 F. 603 (C.C.A.2); Erie R. Co. v. Burke, 214 F. 247 (C.C.A.2); Robbins v. Pennsylvania Co., 245 F. 435, 441 (C.C.A.6); Pennsylvania R. Co. v. Lackner, 246 F. 931 (C. C.A.3); American Law Institute, Torts, § 334. It is likewise generally recognized law that a jury may find that negligence exists toward a pedestrian using a permissive path on the railroad right of way if he is hit by some object projecting from the side of the train. Southern Ry. Co. v. Cochran, 29 F.(2d) 206 (C.C.A.5); Schultz v. Erie R. Co., 46 F.(2d) 285 (C.C.A.3); St. Louis, S. W. Ry. Co. v. Wilcox, 57 Tex. Civ.App. 3, 121 S.W. 588; Missouri, K. & T. Ry. Co. v. Scarborough, 29 Tex.Civ.App. 194, 68 S.W. 196; St. Louis, S. W. Ry. Co. v. Balthrop (Tex.Civ.App.) 167 S.W. 246; Chesapeake & O. Ry. Co. v. Davis, 58 S.W. 698, 22 Ky.Law Rep. 748; Pruitt v. Southern Ry. Co., 167 N.C. 246, 83 S.E. 350; Scott v. Davis, 216 Mo.App. 530, 270 S. W. 433; cf. Louisville & N. R. Co. v. Marlow, 169 Ky. 140, 183 S.W. 470.

Plaintiff's testimony that the black object which struck him looked like a swinging door was sufficient to take to the jury the question whether he was injured in the manner alleged and whether the defendant was negligent in allowing a door to swing, despite the defendant's testimony that an inspection at Ashley showed all car doors to be closed and sealed.

The main contention of the appellant is that the plaintiff's conduct in walking so close to a moving train in the dark constituted contributory negligence as a mat-

ter of law. Much testimony was directed to the character of the ground lying between the longitudinal path and the fence, the plaintiff endeavoring to prove that he could not safely have walked outside the beaten path, and the defendant that he could. Witnesses testified that no one ever walked outside the path because the ground slanted away toward the fence and there were ruts in it; but the fact that trucks and automobiles of all sorts were accustomed to pass along the right of way from Rock street to Hughes street proves conclusively that the ground was traversable outside the beaten path, and the photographs show that at the worst it is only a little rough at the spot where Tompkins was struck. The contention that he could not have stepped aside while the train was passing is patently absurd. So the question is reduced to whether he was guilty of contributory negligence as a matter of law in not avoiding all danger by the simple expedient of stepping to one side. On this issue we must take the evidence in the light most favorable to the plaintiff and must assume that the train was moving at a speed of only 8 or 10 miles an hour, as the train crew testified.

As always in judging of negligence, it is a question of the gravity of the danger, coupled with its likelihood, as compared with the opportunity of avoiding it. The B.B. No. 21, 54 F.(2d) 532, 533 (C.C.A.2). In the case at bar, the opportunity to avoid danger was easily available and the danger was very great, if anything should happen to be projecting from the train; but we cannot say that this particular danger was likely, in view of the testimony of the train checkers that seldom, if ever, had they known a door to swing open. Nor can we say, in view of the cases, that the possibility of being hit by some unusual object projecting from the side of a train is one that ought to be foreseen and enough to charge the plaintiff with contributory negligence as a matter of law, if he remains within reach of it. Schultz v. Erie R. Co., 46 F.(2d) 285 (C.C.A.3); Pruitt v. Southern Ry. Co., 167 N.C. 246, 83 S.E. 350; Missouri, K. & T. Ry. Co. v. Scarborough, 29 Tex.Civ.App. 194, 68 S.W. 196; St. Louis, S. W. Ry. Co. v. Wilcox, 57 Tex.Civ.App. 3, 121 S.W. 588; Texas & P. Ry. Co. v. Greene, 291 S.W. 929, affirmed (Tex.Com.App.) 299 S.W. 639; Chesapeake & O. Ry. Co. v. Davis, 58 S.W. 698, 22 Ky.Law Rep. 748; Sullivan v. Vicksburg, S. & P. R. Co., 39 La.Ann. 800, 2 So. 586, 4 Am.St.Rep. 239. To us it would seem imprudent to walk, or even to stand, in the dark within a foot of a train moving at the rate of 10 miles an hour; but the fact that recoveries have been allowed under closely similar circumstances in the cases above cited indicates that fair-minded men may hold a different view. This is enough to preclude taking the issue from the jury. Richmond & Danville Railroad Co. v. Powers, 149 U.S. 43, 45, 13 S.Ct. 748, 37 L.Ed. 642; Texas & Pac. Ry. Co. v. Harvey, 228 U.S. 319, 33 S.Ct. 518, 57 L.Ed. 852. Even when a plaintiff has stood so close to the edge of a station platform as to be thrown down by the suction of a swiftly passing train, the question of contributory negligence has been left to the jury. Munroe v. Pennsylvania R. Co., 85 N.J.Law, 688, 90 A. 254, Ann.Cas.1916A, 140. In Delaware & H. R. Co. v. Wilkins, 153 F. 845 (C.C.A.2), this court held that it was contributory negligence for the plaintiff not to step aside beyond the reach of the bucking beam of an engine rounding a curve. This would be apposite if the present plaintiff had been struck by the end of a car, for he must anticipate that some of the cars may overhang the ends of the ties. He is not, however, obliged to anticipate unusual projections from the side of the cars, and from the jury's verdict we must take it that he was injured by a projecting door. We do not think it was error to leave the issue of contributory negligence to the jury.

The appellant contends that error was committed in permitting the plaintiff to testify on redirect examination as to statements he had made to doctors and others concerning the way the accident happened. It is necessary to explain how this came about. On direct examination the plaintiff had testified that he was struck by "a black object that looked like a door to me." On cross-examination he testified that from the time of the accident it had always been his impression that the black object was a door swinging out from a car; that this had always been his claim, and he had told this to his attorneys. He was then confronted with a verified bill of discovery, prepared by his attorneys and attested by him, which alleged that he was unable to state what was the object which the defendant permitted to project from the train, and contained other allega-

**606**

tions at variance with his testimony. Such allegations he admitted to be false, as well as similar allegations in the complaint in the present action, verified by his attorney, with respect to the speed of the train and its failure to give warning of its approach. Thus he stood impeached in important respects. On redirect examination he was allowed to testify that before he ever knew Mr. Nemeroff, his attorney, he had told the doctors at the hospital, and any one else who asked about the accident, that it happened as he had explained to the court and jury; that he had never been willing to swear positively that it was a door which struck him, but he believed it to be. On recross-examination he gave the names of the doctors he had told of the accident and was interrogated as to what he said to them. The appellant contends that the statements elicited on redirect examination concerning conversations were improper rehabilitating testimony to meet the impeaching admissions brought out on cross-examination. See Dowdy v. United States, 46 F.(2d) 417, 424 (C.C.A.4); Di Carlo v. United States, 6 F.(2d) 364, 366 (C.C.A.2); Ferris v. Sterling, 214 N.Y. 249, 254, 108 N.E. 406, Ann.Cas.1916D, 1161. But it seems to us that the cross-examination had been so broad as to render the redirect competent. He was asked on cross-examination whether he had always had the impression that he was hit by a car door and whether that had always been his claim. To explain his answer that it had, it was proper to allow him to say that he had told the doctors so immediately after the accident.

Judgment affirmed.