GILBERT v. ERIE R. CO.

(Circuit Court of Appeals, Sixth Circuit. November 13, 1899.)

No. 720.

1. RAILROADS—INJURY AT CROSSING—CONTRIBUTORY NEGLIGENCE.

A petition in an action to recover for the death of plaintiff's decedent by being struck by a train on defendant's railroad at a crossing, which alleges that the decedent, while approaching the crossing in a covered buggy, and when 135 feet distant therefrom, saw the approaching train,

and drove upon the crossing, without again looking in that direction, discloses such contributory negligence on his part as to preclude any recovery, although it alleges negligence on the part of defendant's servants in running the train at an unusual rate of speed, and in failing to give the proper signals.

**2. NEGLIGENCE—RULE AS TO EFFECT OF CONTRIBUTORY NEGLIGENCE.**

The rule that a plaintiff who, by his own negligence, placed himself in a dangerous position, where an injury was likely to result, may still recover for such injury where the defendant, with knowledge, or such notice as is equivalent to knowledge, of plaintiff's danger, failed to exercise reasonable care by which the injury might have been avoided, has no application to a case where the injury was the result of the concurrent negligence of both parties.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

O. C. Pinney, for plaintiff in error.

Before LURTON and DAY, Circuit Judges, and THOMPSON, District Judge.

DAY, Circuit Judge. This case was decided in the court below on demurrer to the petition, and the sole question presented for determination here is, did the court err in sustaining the demurrer? The petition, omitting formal parts, is as follows:

"Plaintiff says: That she is the duly appointed, qualified, and acting administrator of the estate of Calvin Gilbert, now deceased. That the defendant is a corporation, operating railroads within the state of Ohio, and was so doing at all the times herein mentioned, and among which was a railroad running from Cleveland, Ohio, southeasterly, and passing through the village of Solon, about twenty miles from Cleveland, and containing about six or seven hundred inhabitants. That said Calvin Gilbert, when in full life, and on or about the 3d day of November, 1897, was residing in said village of Solon, on the first street crossing the tracks of the said defendant southeasterly from its depot. That he resided on the westerly side of said street, and southerly side of said railroad track, and only a short distance therefrom. That on or about the 3d day of November, at one o'clock p. m., said Calvin Gilbert, riding in a covered buggy, with the side curtains on, passed out of his yard, driving a horse, turned northerly to cross said track. That when not more than 135 feet from said track, and while looking out of his buggy southeasterly, saw the train approaching, operated by said defendant, its officers, agents, and servants, at which time said train blew a long whistle, and was between 2,600 and 3,000 feet in a southeasterly direction from said crossing, and was coming in the direction of said crossing. That said Calvin Gilbert then continued to approach said crossing at a rate of six miles an hour, and, as he approached, looked in a northwesterly direction, along the tracks of said company, to discover if any trains were coming from that direction. That said defendant, at the time, maintained two tracks at said crossing. That about 600 feet easterly from the crossing on which said Gilbert was driving was another parallel crossing, which said train had to pass before reaching the crossing of said street on which said Gilbert was driving. That said Gilbert proceeded to approach and cross said tracks, and did not again look in the direction from which said train was coming, and had only time to observe as to whether any train was coming from the other direction, and reached said track on which said train was coming in not more than twenty-four seconds from the time that he saw the said train. The agents and servants of said defendant, in operating said train, did not blow any whistle for the crossing six hundred feet easterly from the crossing on which said Gilbert was driving, and did not blow any whistle for the crossing on which said Gilbert was driving; neither did said agents and servants cause any bell to ring from the time that they sounded said whistle, 3,000 feet away, until the time it hit the buggy in which

said Gilbert was driving, as herein described. That it was the duty of said agents and servants operating said train to cause a distinct and sharp whistle to be blown before crossing either of said streets, and said Calvin Gilbert could have distinctly heard either of the same had it been blown, and would have been warned by said whistles, and escaped injury. Said Calvin Gilbert lived at said place ever since said railroad was constructed, and had crossed the same a great many times, and was familiar with the speed at which the train of said railroad company ran when passing upon said track in the vicinity of said crossing. That the ordinary and usual rate of speed at which said train ran would have required forty-five or fifty seconds in which to reach said crossing, and all of which said Calvin Gilbert knew, and which he believed it would require this train to occupy before said crossing was reached. Said Calvin Gilbert, not hearing any of said whistles, was therefore unaware of the rapid approach of said train, which was at the time going at the reckless rate of speed of more than ninety miles an hour. That said train was the fastest train upon said track, as per the time table issued by said defendant, and on said day was behind time, and had aboard some of the executive officers of said defendant, and was running at a terrible rate, and much faster than it had ever run when passing along said track in this vicinity. That, at the time said train approached this crossing, the engineer did not see the approach of Calvin Gilbert, and neither did the fireman on the engine of said train see him, and it was the duty of both to have seen him, and to have done all that could be done to avoid any accident. Said Calvin Gilbert was at all times after said whistle in full view of said engineer and fireman, and had he been seen by either, and had they exercised reasonable care in the management of the train after seeing him, said accident could have been avoided. The said defendant was not at said time maintaining any watchman at said crossing, which is in a thickly-settled part of Solon, and where teams frequently cross, and it was the duty of said defendant to have maintained a watchman at said crossing. Plaintiff says that, as the buggy of said Calvin Gilbert was upon the track upon which said train was coming, said train came into collision therewith, and struck said Calvin Gilbert, and caused his death. Plaintiff says that she is a widow and only heir of said Calvin Gilbert, and brings this action on behalf of herself as such heir and in her capacity as such administrator. Plaintiff says that the death of said Calvin Gilbert was caused by the negligent, careless, and reckless manner in which the agents and servants of said defendant managed its train, and by the failure of said defendant to maintain a watchman at said crossing, and was not caused by the carelessness or negligence of said Calvin Gilbert that in any way contributed to his death. That by reason of the premises she has been damaged in the sum of $10,000, for which she asks judgment against said defendant."

From the opinion of the learned judge who heard the case in the circuit court, it is apparent that it was decided, and the demurrer sustained, upon the theory that the statements of the petition show the deceased, Calvin Gilbert, to have been guilty of contributory negligence, and as a consequence there can be no recovery from the resulting injury or death.

The duty of one driving upon a public highway, and approaching a railway crossing, has been the subject of adjudication in the supreme court of the United States in a number of cases. In Railroad Co. v. Houston, 95 U. S. 697, Mr. Justice Field, delivering the opinion of the court, says:

"If the position most advantageous for the plaintiff be assumed as correct, that the train was moving at an unusual rate of speed, its bell not rung, and its whistle not sounded, it is still difficult to see on what ground the accident can be attributed solely to the 'negligence, unskillfulness, or criminal intent' of the defendant's engineer. Had the train been moving at an ordinary rate of speed, it would have been impossible for him to stop the engine when within four feet of the deceased. And she was at the time on a private right of way of the company, where she had no right to be. But, aside from this fact, the

failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employés in these particulars was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, ·and not to walk carelessly into the place of possible danger. . Had she used her senses, she could not have failed to both hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. . If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant. No railroad company can be held for a failure of experiments of that kind. If one chooses in such a position to take risks, he must bear the possible consequences of failure. Upon the facts disclosed by the undisputed evidence in the case, we cannot see any ground for a recovery by the plaintiff."

In Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125, the facts are somewhat analogous to those set up in the petition in the present case. Mr. Justice Blatchford, in speaking for the court, on page 617, 114 U. S., and page 1126, 5 Sup. Ct., says:

"The ground upon which the circuit court directed a verdict for the defendant (2 McCrary, 268, 8 Fed. 488) was that the plaintiff, by his own showing, was guilty of contributory negligence, whatever negligence there may have been on the part of the defendant. Applying the test that if it would be the duty of the court, on the plaintiff's evidence, to set aside, as contrary to the evidence, a verdict for the plaintiff, if given, the court had authority to direct a verdict for the defendant, it considered the case under the rules laid down in Improvement Co. v. Stead, 95 U. S. 161, and especially in Railroad Co. v. Houston, Id. 697, and arrived at the conclusion of law that neither the fact that the train was not a regular one, nor the fact of its high rate of speed, excused the plaintiff from the duty of looking out for a train; that the fact that it did not stop at the depot could avail the plaintiff only on the view that, hearing a whistle from it, as it was south of the depot, he supposed it would stop there, and so failed to look; but that, in such case, he would have been negligent, because it was not certain the train would stop at the depot, and he would have had warning that the train was approaching; and that the neglect of the train to blow a whistle or ring a bell between the depot and the crossing did not relieve the plaintiff from the duty of looking back, at least as far as the depot, before going on the track; and that in view of the duty incumbent on the plaintiff to look for a coming train before going so near to the track as to be unable to prevent a collision, and of the fact that he was at least 100 feet from the crossing when the train passed the depot, and could then have seen it if he had looked, and have avoided the accident by stopping until it had passed by, he was negligent in not looking."

In a very late case (Railroad Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763) the same doctrine is applied, and again enforced.

The principle settled in these cases is that the failure on the part of the railway company to give signals, when approaching a highway crossing, although the train may be moving at an unusual rate of speed and the company be guilty of negligence in the running and management thereof, does not absolve the traveler from the duty of listening and looking before attempting to cross such railroad track, in order to avoid the approaching train. In such cases, if the traveler uses his senses, and the view of the approaching train is unobstructed, he cannot fail to be aware of its approach. If, failing to exercise this care, the traveler thoughtlessly drives upon the track without seeing the approaching train, he so far contributes

to his injury as to deprive him of the right of recovery. If, using the senses of sight and hearing, the traveler sees the train approaching, and yet attempts to cross the track, instead of waiting for the train to pass, or taking proper precautions to preserve his safety, the consequences of such negligence cannot be charged to the railroad company. From the facts in the present case, as stated in the petition, it appears that the deceased was approaching the track of the defendant company in a covered buggy; that he had a full view of the track in a southeasterly direction, and that he saw the approaching train at a distance of from 2,600 to 3,000 feet, rapidly nearing the crossing; that this discovery was made by the decedent when he was 135 feet from the track; that he proceeded to approach, and attempted to cross the track without looking in the direction from which the train was coming; that he reached the track in not more than 24 seconds from the time he saw the train. During this time the train was in full view. There was nothing to prevent decedent from checking or stopping his horse in time to avoid the injury. He did not see fit to do so, but, looking away from the train, he drove in his covered buggy upon the track and was killed. The statement in the petition is that he did not look at the train after his first discovery of its approach. In thus experimenting upon the chances of crossing in safety, we think the decedent was guilty of negligence; and, admitting the allegations of the petition as to the negligence of the company, it still appears that the negligence of the decedent, continuing up to the time of the injury, directly contributed thereto, and consequently prevents a recovery in this case.

It further appears that a cause of action is sought to be made under the rule, recognized in a number of cases, which permits a recovery where, notwithstanding the negligence of the plaintiff, there was negligence on the part of the company, after it became aware of the negligence of the plaintiff, in failing to exercise reasonable care to avoid the consequences of the plaintiff's neglect. This rule was applied in this court in the late case of Railroad Co. v. Hellenthal, 60 U. S. App. 156, 31 C. C. A. 414, and 88 Fed. 116. Judge Clark, in delivering the opinion of the court, uses this language:

"There is, however, a qualification of this general rule as thus stated, as fully established by decisions of the highest authority as the rule itself. This qualification is expressed in the proposition that, if it be shown that the defendant, after becoming aware of the plaintiff's negligence, might, by the exercise of reasonable care and prudence, have avoided the effect of the plaintiff's negligence or trespass, the defendant is liable for the injury. The qualification of the rule is thus stated in Railway Co. v. Ives, 144 U. S. 408, 429, 12 Sup. Ct. 687: 'Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; subject to this qualification, which has grown up in recent years (having been first enunciated in Davies v. Mann, 10 Mees. & W. 546), that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence.'"

This rule, as applied in the supreme court of the United States in cases of contributory negligence, has had reference to cases where

the defendant, after knowledge of the dangerous position in which the negligence of the plaintiff has placed himself, might, by the exercise of reasonable care, have avoided the consequences of the injured party's negligence. In such cases recovery has been permitted. Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653.

Shearman & Redfield, in their work on Negligence (5th Ed. § 99), state the doctrine as follows:

"It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was more immediately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. We know of no court of last resort in which this rule is any longer disputed, although the same rule, in substance, but inaccurately stated, has been made the subject of strenuous controversy. But, furthermore, the plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was more immediately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury. It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed. It is enough if, having sufficient notice to put a prudent man on the alert, he does not take such precautions as a prudent man would take under similar notice. This rule is almost universally accepted. The most reckless persistence, on the part of one exposed to danger, will not justify another in consciously refraining from using care to avoid injury to him. This qualification of the doctrine of contributory negligence, often called the 'rule in Davies v. Mann,' from the leading case on this subject, has been much criticised. But those criticisms turn mainly upon the language used by Baron Parke in that case, which is, perhaps, too broad, and which has not been here adopted, although it has been literally repeated in the highest court of England as well as in that of the United States. It is possible, too, that the application of the principle in Davies v. Mann was erroneous, but that does not affect the validity of the principle which lay at the foundation of the case. That principle is that the party who has the last opportunity of avoiding accident is not excused by the negligence of any one else. His negligence, and not that of the one first in fault, is the sole proximate cause of the injury."

As we understand the rule to be deduced from these authorities, it amounts to this: That where the plaintiff, by his own negligence, has placed himself in a dangerous position, where injury is likely to result, the defendant, with knowledge, or such notice as is equivalent thereto, of the plaintiff's danger, is bound to use reasonable care and diligence to avoid injuring the plaintiff; and where, by the exercise of such care he could do so, fails to avoid the injury, this negligence introduces a new element into the case, and renders the defendant liable, because such negligence becomes the direct and proximate cause of the injury. We do not think the principle settled in these cases applies to a case where it clearly appears that the injury is the result of the concurrent negligence of the plaintiff and defendant. There is no averment in the petition that the engineer or fireman saw the decedent upon the track, or in a place of imminent danger, in time to have avoided the injury. Taking the allegations of the petition together, it seems to us to be a case of concurrent negligence on the part of the decedent and the railway company. Assuming it to be true that the defendant was guilty of the negligence charged in the petition, the deceased was guilty of negligence which directly contributed to the injury. In this view

of the case, we do not think it is brought within the principle laid down in Railroad Co. v. Hellenthal, above cited, and similar cases. As the petition fails to disclose a cause of action in favor of the plaintiff, the demurrer was properly sustained, and the judgment of the court below is affirmed.