CHICAGO, M. & ST. P. RY. CO. v. BENNETT.

(Circuit Court of Appeals, Eighth Circuit. September 19, 1910.)

No. 3,288.

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 724*)—ASSIGNMENT OF ERROR FOR REFUSAL TO DI-
RECT VERDICT SUFFICIENT WITHOUT REPEATING THE REASONS FOR THE DI-
RECTION STATED BELOW.

Where at the close of all the evidence a motion to direct a verdict for
the defendant, on the grounds that there is no substantial evidence to
sustain a charge of negligence of the defendant and that the evidence of
the plaintiff's contributory negligence is conclusive, is denied, an assign-
ment of the denial as error is sufficient to invoke the review of this rul-
ing, without a further statement of the reasons why the ruling is alleged
to be erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2997;
Dec. Dig. § 724.*]

2. NEGLIGENCE (§ 82*)—CONTRIBUTORY NEGLIGENCE—RAILROAD CROSSING.

One whose negligence contributes to his injury cannot recover damages
of another whose negligence concurred to cause it, even though the care-
lessness of the latter was the more proximate cause of it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 112–114;
Dec. Dig. § 82.*]

3. NEGLIGENCE (§ 136*)—DUTY TO DIRECT VERDICT WHERE EVIDENCE OF CON-
TRIBUTORY NEGLIGENCE CONCLUSIVE.

Where at the close of the trial the evidence so clearly discloses the
fact that the plaintiff was guilty of negligence which contributed to his
injury that a finding to the contrary cannot be sustained by the court,
it is its duty to direct the jury to return a verdict for the defendant.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353;
Dec. Dig. § 136.*]

4. RAILROADS (§ 335*)—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE
—NEGLIGENCE OF DEFENDANT NO EXCUSE FOR.

The negligence of the servants of railroad companies in failing to sound
whistles or ring bells on the approach of their trains to crossings con-
stitutes no excuse for the failure of travelers on the highways to dis-
charge their duty to exercise reasonable care to look and listen effect-
ively to avoid collisions before they enter upon railroad tracks.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1087; Dec. Dig.
§ 335.*]

5. RAILROADS (§§ 327, 328*)—CONTRIBUTORY NEGLIGENCE—FAILURE TO STOP,
LOOK, AND LISTEN NEGLIGENCE, WHERE LOOKING AND LISTENING WITH-
OUT STOPPING USELESS.

Where a plaintiff upon a highway, approaching a railroad crossing, can-
not look or listen effectively without stopping, it is his duty to stop and
look and listen before entering upon the railroad, and a failure so to do
is fatal to his recovery, if such failure contributes to his injury.

If his view is obstructed, then he must listen more attentively and care-
fully. If his eyes are useless, and there is any noise or confusion which
he controls, such as that of horses' feet, or the rumbling of a wagon, or
the grinding of brakes, which interfere with the acuteness of his hearing,
it is his duty to stop such noise or interfering obstruction and listen for
the train before going upon the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1050, 1058;
Dec. Dig. §§ 327, 328.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Southern District of Iowa.

Action by Marion Bennett against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

O. W. Dynes, O. M. Brockett, J. C. Cook, J. N. Hughes, and Jaques & Jaques, for plaintiff in error.

A. C. Steck, D. F. Steck, F. F. Dawley, and C. E. Wheeler, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. ʼThe plaintiff below drove his team of horses, attached to a lumber wagon, upon the railroad of the Chicago, Milwaukee & St. Paul Railway Company at a crossing in a cut about eight feet deep, and was struck añd injured by a train that crossed the highway on the railroad. He sued the company for damages caused by its alleged negligence, in that it failed to sound the whistle or ring the bell of its engine at the proper time to warn of the latter's approach. The company alleged that it rang the bell, sounded the whistle, and otherwise exercised due care, and that the plaintiff's injury was caused by his own negligence, in that he failed to exercise ordinary care to ascertain whether or not a train was approaching before he drove his horses upon the railroad.

At the close of the trial the company made a motion for a peremptory instruction to the jury to find for the defendant (1) because the evidence showed that the plaintiff was not in the exercise of ordinary care for his safety at and immediately preceding the time of his injury; (2) because this lack of care contributed to his injury; and (3) because the. evidence failed to show that the company was guilty of actionable negligence. The court denied the motion, and this denial is specified as error in the company's assignment. Counsel for the plaintiff below insist that this specification is too general to invoke the consideration of the ruling by an appellate court under rule 11 of this court, which requires that an assignment of errors shall set out separately and particularly each error asserted and intended to be urged, and declares that errors not assigned according to this rule will be disregarded, and they cite Van Stone v. Stillwell & Bierce Mfg. Co., 142 U. S. 128, 133, 12 Sup. Ct. 181, 35 L. Ed. 961, Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 415, 12 Sup. Ct. 679, 36 L. Ed. 485, Supreme Lodge of K. P. v. Withers, 32 C. C. A. 182, 185, 89 Fed. 160, 163, and Deering Harvester Co. v. Kelly, 43 C. C. A. 225, 228, 103 Fed. 261, 264.

The opinions in these cases have been carefully examined, but they do not seem to us to sustain the contention of counsel for the plaintiff here. The objection counsel make to the specification is that it fails to state for which of the three reasons specified in the motion its denial is now claimed to be error. The denial, however, was error, if the motion should have been granted for either of the reasons urged therein, and the eleventh rule requires counsel to set forth in their assign-. ment the errors alleged only, and not the reasons why they alleged that

they are errors. The purpose of this rule is to facilitate, not to prevent, reviews. The reasons why the denial was claimed to be error clearly appear in the motion denied, and the practice of restating them in the assignment of errors which counsel seek to establish is too cumbersome and technical to commend itself to the judgment. Where at the close of all the evidence a motion to direct a verdict for the defendant on the grounds that there is no substantial evidence to sustain a charge of negligence of the defendant and that the evidence of the plaintiff's contributory negligence is conclusive is denied, an assignment of the denial as error is sufficient to invoke a review of the ruling, without a further statement of the reasons why the ruling is alleged to be erroneous.

One whose negligence contributes to his injury cannot recover damages of another whose negligence concurred to cause it, even though the carelessness of the latter was the more proximate cause of the injury. Western Union Telegraph Co. v. Baker, 140 Fed. 315, 318, 72 C. C. A. 87, 90, and cases there cited.

If at the close of the trial of an action for negligence the evidence so clearly discloses the fact that the plaintiff was guilty of negligence which directly contributed to his injury that a finding to the contrary cannot be sustained by the court, it is its duty to instruct the jury to return a verdict for the defendant. Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. 529, 532, 63 C. C. A. 27, 30, and cases there cited.

The specification to which reference has been made therefore presents the question: Did the evidence at the close of this trial conclusively prove that the plaintiff was guilty of negligence which contributed to cause his injury? If every disputed issue of fact be determined, as it must be in the decision of this question, in favor of the plaintiff below, these facts were established at the trial:

The crossing at which the accident occurred was in a cut about 8 feet deep to which the highway, which extends north and south, descends from the south on an average grade of a little over half an inch in a foot for a distance of about 30 rods. The railroad runs from the east to this crossing in a cut for a distance of about 968 feet. In the angle between the railroad east of the crossing and the highway south of it were an orchard, locusts, weeds, and a barn, so that as the plaintiff came to the crossing from the south he could see nothing of the railroad or of any trains upon it between the points 30 rods south of the crossing and 25 feet south of the south rail. The railroad at this point consisted of a single track, and was a part of the main line of the company from Chicago to Kansas City. At the time of the accident the plaintiff was a farmer 26 years of age, who lived a few miles north of the railroad, and from the time he was a small boy he had been accustomed to crossing the railroad on this highway on his way to and from Ottumwa, Iowa, which is situated a few miles south of the crossing. He was perfectly familiar with the crossing and of its surroundings and with the facts which have been recited. About 15 trains passed over this crossing daily, the majority at irregular times.

The plaintiff was driving a pair of horses that were hauling an empty lumber wagon at the time of the accident. He was sitting near

181 F.—51

the bolster on the rear axle on a plank that rested on the bolsters, with his feet down between the planks 24 feet back of the heads of his horses, driving them with one hand and with the other holding, by means of a lever, two wooden shoes, six inches long by four inches wide, which constituted a brake against the rims of the rear wheels as he went down to the crossing. He had drawn a load of hay to Ottumwa, and was going home about 7 in the evening on a warm August day. As he went north on the highway he constantly looked and listened for engines and trains, but neither saw nor heard any, with the exception of one passenger train standing on a track west of the crossing, until his horses' heads were over the south rail, when he saw the work train which injured him coming west about 60 feet from the crossing. The engineer first saw the team at about the same time and too late to stop the train, which was running about 15 miles an hour before it struck the wagon. When the plaintiff was about a quarter of a mile from the crossing, he saw a passenger train about a quarter of a mile west of the crossing headed east, and he expected this train, and did not know that there was any train due to go west at that time. At a point about 35 rods south of the crossing he stopped, while a horse drawing a buggy trotted past him; but his view of the railroad was then obstructed by the barn. At the north end of the barn there was an open space of about 2 rods in width, through which he looked, but he saw nothing, and from the north side of that space, which was about 30 rods from the railroad, he could not see anything upon the railroad until he was 25 feet from the south rail. As he descended to the crossing he locked the wagon with the brake, which ground against the rims of the wheels, and with the wagon in this condition he drove his horses at a fast walk until he arrived on the level of the crossing, when he put the brake down tight, so that the horses would not walk so fast, and listened and looked; but he did not stop his horses, nor still the noise of the horses' feet, the rumbling wagon, or the grinding brake. The highway was smooth and hard, and the wagon made some noise, "just about the same as any lumber wagon."

He testified that the whistle of the engine was not sounded and its bell was not rung, and three witnesses who were within hearing distance testified that they did not hear the sound of the bell or the whistle. On the other hand, seven witnesses testified that they heard the bell or the whistle. Two of them—Mrs. Rust, who was expecting her husband on this work train and was listening for its whistle, and her son—testified that they waited for and heard it; and the engineer testified that he sounded it, and the fireman that he rung the bell. It is difficult to conclude that there is any substantial conflict in this evidence concerning the sound of the bell and the whistle, because evidence of those who heard it is so clear, reasonable, and convincing, and that of those who did not hear it may be so readily reconciled with that of those who heard it on the ground that the former failed to notice it, though the whistle sounded and the bell rang.

But, conceding that the whistle was not sounded and the bell was not rung, these facts do not excuse the plaintiff from exercising ordinary care to protect himself from a collision at the crossing. A rail-

road track is a constant warning of danger. The engines and trains must run over them so rapidly that their operators cannot alone protect travelers on the highways which cross them. The law requires railroad companies to sound their whistles and ring their bells as their trains approach the crossings, and it also requires travelers on the highways to exercise ordinary care to use efficiently their senses of sight and hearing to prevent collisions. The failure of the servants of the companies to discharge their duties in this regard is, no excuse for the failure of travelers on a highway to discharge theirs. The latter are still bound by the law to listen and look effectively before they enter upon a railroad track. Railroad Co. v. Houston, 95 U. S. 697, 702, 24 L. Ed. 542; Schofield v. Chicago, etc., Ry., 114 U. S. 615, 618, 5 Sup. Ct. 1125, 29 L. Ed. 224; Fletcher v. Atlantic & Pacific R. R. Co., 64 Mo. 484.

Did the plaintiff faithfully discharge that duty? For 30 rods before his horses' heads came to a point one foot south of the railroad track, where he was in a position whence he could not escape the coming train, his eyes were useless, looking was futile, and he knew it. This fact imposed upon him the duty to make a more diligent use of his sense of hearing, or to stop his horses and go forward where he could see before he drove into the place of irremediable danger. His lumber wagon was rattling over the smooth, hard road, his horses' feet were clattering thereon, and the brake shoes were grinding against the rims of the rear wheels, and he sat between the shoes near the rear axle, 24 feet from his horses' heads, as he came down to the crossing and drove to the track, without stopping his horses or stilling the rattle of their hoofs, the rumble of his wagon, or the grind of his brake, so that he might effectively hear a coming train. Was this the exercise of ordinary care? In Davis v. Chicago, R. I. & P. Ry. Co., 159 Fed. 10, 16, 88 C. C. A. 488, 494 (16 L. R. A. [N. S.] 424) a case identical in all material facts with that in hand, this court answered this question in these words:

"The duty to stop is a relative one. It depends upon the situation of the particular case, the knowledge the traveler has of the situation, and the reliance he may reasonably place under the circumstances on his opportunities for seeing and hearing without taking the last precaution of stopping. The authorities are quite in accord on the proposition that if the view is unobstructed, so that an approaching train, before it reaches the crossing, can be seen, there is no occasion for the special exercise of the sense of hearing, listening, and therefore there is no reason why he should stop for that purpose. On the other hand, if the view is obstructed, interfering with the sense of sight, then he must bring into requisition the sense of listening carefully and attentively. And if there is any noise or confusion over which he has control, such as that of the noise of the horses' feet, or the grinding sound of the wheels, or the ordinary noise of the vehicle, interfering with the acuteness of the sense of hearing, it is his duty to stop such noise or interfering obstruction and listen for the train before going upon the track."

The rule of law here announced is just and reasonable; it is supported, as the quotations in the opinion in that case show, by the decisions of the courts in Railroad Co. v. Hogeland, 66 Md. 149–161, 7 Atl. 105, 59 Am. Rep. 159, Henze v. St. L., K. C. & N. Ry., 71 Mo. 637, 640, Blackburn v. Southern Pacific Ry. Co., 34 Or. 215, 55 Pac. 225–229, Chase v. Railroad, 167 Mass. 383, 45 N. E. 911, Seefeld v.

C., M. & St. P. R. Co., 70 Wis. 216–222, 35 N. W. 278, 5 Am. St. Rep. 168, Shufelt v. Flint & P. M. R. Co., 96 Mich 327, 55 N. W. 1013, Stepp v. Chicago, R. I. & P. Ry. Co., 85 Mo. 235, Merkle v. Railway Co., 49 N. J. Law, 473, 9 Atl. 680, and Denver City Tramway Co. v. Norton, 141 Fed. 599, 607, 608, 73 C. C. A. 1, 9, 10; and we are unwilling to depart from or relax it. If the plaintiff had stopped his horses just before he drove them into their dangerous position, stilled the noise of their feet, of the wagon, and of the brakes, and then listened, he would probably have heard the approaching train and have escaped his injury. If he had stepped off his wagon, and gone to the track before them, and looked to the east, he would certainly have seen the coming train. Looking where he could not see it, and listening while other noises prevented his hearing it, were futile. It is no more the exercise of ordinary care to look and listen when and where looking and listening are useless than it is to fail to look and listen where looking and listening would be effective. The evidence of the contributory negligence of the plaintiff was conclusive in this case, and the court below should have instructed the jury to return a verdict for the company. This conclusion necessitates a new trial of the action, and renders it unnecessary to consider other alleged errors.

The judgment is accordingly reversed, and the case is remanded to the Circuit Court, with directions to grant a new trial.