## ROBBINS v. PENNSYLVANIA CO.

(Circuit Court of Appeals, Sixth Circuit. October 11, 1917.)

No. 2972.

1. **MASTER AND SERVANT** ⬩328—ACTIONS FOR SERVANT'S TORTS—PARTIES.

A joint action cannot be maintained against a master and servant for an injury and death occurring in Ohio, where the master's liability arises solely under the doctrine of respondeat superior.

2. **APPEAL AND ERROR** ⬩1039(9)—HARMLESS ERROR—COMPELLING ELECTION.

In an action for the death of a person struck by a railroad engine, any error in requiring plaintiff to elect between paragraphs alleging a failure to sound the whistle or bell, or to stop the engine after discovery of decedent's peril, and a paragraph alleging that defendant carelessly, and recklessly, willfully, and wantonly caused the locomotive to strike and kill decedent, was harmless, where plaintiff was practically allowed to introduce all testimony presented having any pertinency to the several charges of negligence, and no exceptions were reserved to the giving or refusal of instructions having any bearing on the excluded paragraph.

3. **RAILROADS** ⬩401(9)—INJURIES TO PERSONS ON TRACK—INSTRUCTIONS—LAST CLEAR CHANCE DOCTRINE.

In an action for the death of a person struck by a railroad engine as he was starting to cross a bridge customarily used by the public in connection with a footpath along the right of way, the evidence showed that the engineer and decedent were both familiar with the bridge and its surroundings and were acquaintances; that as the engine approached the bridge the engineer saw decedent turn his head and look toward the engine; that it was decedent's usual course to stop on a platform at the entrance to the bridge and wait until the engine passed; that the engineer thought he would do this, but instead he started to cross the bridge in front of the approaching engine when it was too late to stop the engine. There was no evidence that the engineer had any reason to anticipate decedent's sudden turn into the zone of danger, or that the injury could have been avoided; but it appeared that he did not sound the bell or whistle. *Held* that the refusal of instructions on the subject of last clear chance was not error, as the most that could be said of the evidence was that it was open to the jury to find that both the engineer and decedent were guilty of negligence directly concurring in bringing about the injury.

4. **NEGLIGENCE** ⬩83—CONTRIBUTORY NEGLIGENCE—"LAST CLEAR CHANCE" DOCTRINE.

The doctrine of "last clear chance" takes account of the acts and omissions of both the person injured and the defendant, and applies only where the defendant has either actual notice or is fairly chargeable with notice of the peril of the person injured, and negligently fails to avoid the injury, and the rule never applies where the concurrent neglect of both directly contributes to the injury.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Last Clear Chance.]

5. **APPEAL AND ERROR** ⬩1059—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

In an action for the death of a person, struck by a railroad engine while crossing a bridge customarily used by the public in connection with a footpath along the right of way, the exclusion of evidence to show that the place of the accident was part of an ordinary highway was immaterial, where the evidence was undisputed that decedent was familiar with its dangers, and it appeared that no use had been made of the land as an ordinary highway, or street, for many years, and that no such use had ever been made of the railroad bridge, and the court ruled in effect

that the rights and obligations of the parties were the same as though the footpath formed part of the highway.

6. RAILROADS ⊚⟶356(3)—DUTIES AT PLACES CUSTOMARILY USED BY PUBLIC.
Where a footpath along and adjacent to railroad tracks and a board walk across a bridge, constituting a continuation of the footpath, had been customarily used for years by people residing or working in the vicinity, the rights and obligations of the railroad company and a person struck by an engine were no greater or less than they would have been, had the footpath formed part of a public highway.

7. RAILROADS ⊚⟶370—INJURIES TO PERSONS ON TRACK—SIGNALS.
Under Gen. Code Ohio, § 12540, requiring the person in charge of a locomotive engine, when approaching a road crossing, to sound the whistle or ring the bell, there was no obligation to give such warning in approaching a railroad bridge across which was a board walk customarily used by persons residing and working in the vicinity.

8. RAILROADS ⊚⟶381(4)—INJURIES TO PERSONS ON TRACK—CONTRIBUTORY NEGLIGENCE.
The failure to ring the bell or sound the whistle in approaching such bridge, even if required, did not relieve a person starting to cross the bridge from the necessity of taking ordinary precautions for his own safety.

9. APPEAL AND ERROR ⊚⟶1052(8)—HARMLESS ERROR—ADMISSION OF EVIDENCE.
The admission of evidence as to the reason for omitting to sound the bell or whistle in approaching such bridge was harmless, where the evidence showed contributory negligence.

10. RAILROADS ⊚⟶384—INJURIES TO PERSONS ON TRACK—MAINTAINING DANGEROUS PLACE.
Any negligence on the part of a railway company in maintaining a narrow board walk 72 feet long across a bridge customarily used by the public in connection with a footpath along the right of way gave no right to recover for the death of a person struck by an engine while on the board walk, where the danger was manifest and decedent understood the situation perfectly.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio.

Action by Mary A. Robbins, administratrix of Henry H. Robbins, deceased, against the Pennsylvania Company and another. Judgment for defendant company, and plaintiff brings error. Affirmed.

Charles Koonce, Jr., and Guy T. Ohl, both of Youngstown, Ohio (McKain & Ohl, of Youngstown, Ohio, of counsel), for plaintiff in error.

Fred J. Heim, of Youngstown, Ohio (Arrel, Wilson, Harrington & De Ford, of Youngstown, Ohio, of counsel), for defendant in error.

Before · WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This was an action by an administratrix against the Pennsylvania Company to recover damages for alleged negligence in causing the death of Henry J. Robbins. By an amended petition the charge of negligence was made jointly against both the Pennsylvania Company and its engine driver, John Lang, who was in charge of the locomotive through which decedent received his injuries. Lang made separate answer, admitting that he was operating

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the engine at the time of the injuries, but denying the negligence charged against him, and alleging distinct acts of negligence on the part of decedent. The company sought and obtained removal of the cause to the court below, on the grounds of diversity of citizenship, as between plaintiff and the company, and also separable controversy, and alleging further that the recovery originally claimed was for $2,500, that by the amended petition this sum was increased to $25,000, and that the plaintiff had fraudulently and improperly joined Lang, a citizen and resident of the state of Ohio, for the sole purpose of defeating jurisdiction of the United States court and so preventing removal. Motion to remand, supported by affidavit, was overruled. Separate answer was subsequently filed by the company, admitting that Lang was in its employ in the capacity of a locomotive engineer and in charge of the locomotive in question, and alleging, among other things, the exercise of due care towards decedent and acts of contributory negligence on his part at the time of the injury. The case was heard on evidence offered by both sides; at the close of plaintiff's evidence, and again after all the evidence had been received, the company moved that a verdict be directed in its favor, which in each instance was overruled; the cause was submitted to the jury upon an extended charge of the court, and verdict was rendered for the company. Motion for new trial was overruled. Five assignments are relied on under the writ of error.

[1] 1. It is claimed that the court erred in denying the motion to remand. It is enough to say of this that, if the company can be made liable under the issues and the facts presented, it is because of the relation of master and servant which existed between it and the engineer in charge of the locomotive. The injury and death occurred in Ohio; and, according to the rule of decision prevailing in the state, a joint action cannot be maintained against a master and servant where the master's liability arises solely under the doctrine of respondeat superior. French v. Construction Co., 76 Ohio St. 509, 81 N. E. 751, 12 L. R. A. (N. S.) 669. It may be well to point out one of the reasons expressed in the opinion (76 Ohio St. 518, 81 N. E. 752):

"It is, and since the decision by this court of Clark v. Fry, 8 Ohio St. 358 [72 Am. Dec. 590], has been, the settled rule and law in this state that a joint action cannot be maintained against master and servant, in any case where the master's liability for the wrongful and negligent act of the servant arises solely and only from the legal relationship existing between them under the rule of respondeat superior, and not by reason, or because of, the master's personal participation in such wrongful or negligent act."

The rule thus existing in the state is controlling here. Ches. & Ohio Ry. v. Cockrell, 232 U. S. 146, 152, 153, 34 Sup. Ct. 278, 58 L. Ed. 544; Chi., R. I. & Pac. Ry. v. Dowell, 229 U. S. 102, 113, 33 Sup. Ct. 684, 57 L. Ed. 1090; Illinois Central R. R. Co. v. Sheegog, 215 U. S. 308, 318, 30 Sup. Ct. 101, 54 L. Ed. 208; Veariel v. United Engineering & Foundry Co. (D. C.) 197 Fed. 877, 878.

[2] 2. One of the assignments is that the court erred in compelling plaintiff "to elect upon which averment [of negligence] she would proceed to trial." During the opening statement of plaintiff's

counsel a question arose between counsel and the trial judge as to paragraph 5 of the amended petition, in which it is alleged that the company and its engineer, Lang, "carelessly, recklessly, willfully, and wantonly" caused the locomotive "to strike, wound, and kill the said Henry J. Robbins." The trial judge thought this was inconsistent with the first four paragraphs of the amended petition, in which the acts of negligence charged in substance were failure to sound the locomotive whistle or bell or to stop the locomotive after discovery of decedent's peril and before the engine struck him; and so the court required plaintiff to elect whether she would proceed under the allegations of paragraph 5 or those of the preceding four paragraphs. We do not find it necessary to pass upon this ruling, for it was not prejudicial. Counsel for plaintiff said in contending against the court's view as to inconsistency between the degrees of negligence alleged:

"The same evidence will go in, of course, under any circumstances, and what inference is to be drawn from it the jury only can determine."

And it is plainly to be inferred from the record that all available testimony on the subject of alleged negligence, regardless of degree, was introduced through the engineer, Lang; he was called by both sides as a witness and exhaustively examined; indeed he was the only person claimed to have witnessed the accident; in short, despite the election, plaintiff was practically allowed to introduce all the testimony she presented which could have any pertinency to the several charges of negligence. Requests were made for special instructions to the jury upon the subjects of paragraphs 1, 2, 3, and 4, but not of paragraph 5. These special requests were refused, and of this we shall speak later. The general charge treats extensively of the subject of negligence, and while exception was reserved to denial of the requests mentioned, yet none was taken to the general charge on the subject of negligence which has any bearing upon paragraph 5. The question then of inconsistency between allegations of "negligence" and "wanton negligence" is not important here.

3. Coming now to the requests denied, they were three in number and designed to present a question claimed to arise under the first four paragraphs of the amended petition in substance above stated. The exception was reserved at the close of the general charge, counsel stating that his exception was aimed at the court's refusal "to charge the doctrine of the last clear chance." The trial judge, however, stated in substance that it had been his purpose to include the requests in the general charge and that he believed this had been done.

In order rightly to understand this feature of the case it will be necessary to make a further statement of facts disclosed by the record. The defendant company maintains a double-track railroad at the place of the accident, which tracks may for present purposes be said to lie in an east and west direction. The west-bound trains move on the northerly track and the east-bound trains on the southerly one, and the tracks are accordingly distinguished as west-bound and east-bound. The accident occurred on the west-bound track and upon a bridge owned and maintained by the company across Mosquito creek in the city of Niles, Ohio. A path extended for some considerable distance

along and adjacent to the northerly side of the west-bound track and to the Mosquito creek bridge, and many people residing or working in the vicinity of the track and bridge had been accustomed for years to walk upon this path and across the bridge upon a board walk maintained between the north rail of the west-bound track and a solid metal railing forming the northerly side of the bridge. The distance between the north rail of the track and the path which lay east of the bridge was such as to afford entire safety to pedestrians during the passage of trains; but, except as to a platform presently to be described, the space between the metal railing of the bridge and the overhang of a locomotive was admittedly not sufficient to enable a person passing along the board walk to avoid collision with a locomotive crossing on the west-bound track. The platform mentioned was maintained at the easterly end of the bridge between north and south lines intercepted by the east end of the metal railing and the west end of the path leading to the bridge as stated. The dimensions of this platform were such as to furnish complete safety to foot passengers who would remain at or near its northerly end during the passage of trains along the west-bound track. Persons moving from the west end of the path leading to the platform and bridge were accustomed to pass southwestwardly over the platform and into the board walk extending across the bridge.

The decedent was struck by the locomotive just as he was entering, perhaps he had taken a step or two, upon the easterly end of the board walk next to the metal railing of the bridge. We have seen that the engineer, Lang, was the only person who saw the accident or testified on that subject. Concededly both the engineer and the decedent were familiar with the path, the platform, and the board walk before described. The engineer had been engaged in operating a locomotive for switching purposes in the vicinity, and was so engaged at the time of the injury. The decedent had lived and had been working in the neighborhood for many years; it was his custom to pass over this path and platform and board walk several times almost daily; and he and the engineer were acquaintances. The accident occurred on the morning of a clear day. As the engine approached the bridge and Robbins was walking west on the path leading to the platform and board walk, Lang says he saw Robbins turn "his head to the left, over his left shoulder, and as he turned his head that way I was able to look right at his face." This satisfied Lang that Robbins saw the engine coming, and, referring to Robbins' usual course in such instances, he said Robbins "would come up to the end of the bridge, and then he would stop and wait until I got past, a great many times." He thought Robbins would in this instance follow the same course; instead of doing so, Robbins turned southwardly toward the board walk, when, as Lang testified, it was too late to stop the engine or avoid the accident. Lang said that he had Robbins in view from the time he became satisfied that Robbins knew the engine was approaching, and that immediately upon observing Robbins turn toward the board walk he employed all the means, such as reversing the engine, and did all within his power to avoid the accident. True, Lang did not sound the bell or whistle, and there was also an east-bound train passing over the bridge at the time of the injury; but

the testimony is undisputed that, unlike the course pursued at street crossings, it was not customary here to give the signals alluded to upon approaching the bridge, and that Robbins' sudden turn from a place of safety to one of danger prevented giving either of such signals, and, as already stated, that the engineer was satisfied that Robbins knew the engine was approaching; still further, Lang testified without dispute that Robbins did not look for the approaching engine after his turn toward the board walk, and that he (Lang) then "yelled at Mr. Robbins" twice. The trial judge stated the situation thus pointed out in considerable detail, instructing the jury under what circumstances recovery should be allowed or disallowed, and in the course of the charge stating:

"Under the circumstances developed by the testimony introduced on this trial with respect to the use made by the public of the bridge where the accident complained of occurred, I charge you, then, the kind and degree of care which the engineer, Lang, was obliged in law to exercise to avoid injury to Robbins, was precisely the same degree and kind of care as that which Robbins himself was obliged in law to exercise in order to avoid suffering injury to himself."

To this plaintiff's counsel reserved exception and presented an assignment; but they make no contention here in respect of either. The court also instructed the jury that if it should be satisfied by a preponderance of the evidence that—

" * * * Engineer Lang did not exercise such care as men of ordinary care and prudence would ordinarily have exercised, if placed in his position, under the circumstances and conditions surrounding him just before and at the time of this accident, then he was negligent and the defendant company was negligent, and if this negligence contributed directly to cause the accident to decedent, then the plaintiff in this action would be entitled to recover, unless Robbins himself at the time of the accident was negligent in failing to exercise ordinary care for his own safety under the circumstances in which he was placed."

[3, 4] Considering the foregoing instructions in connection with the rest of the charge, we are convinced that the merits of plaintiff's case were fully and fairly explained to the jury under clearly stated and pertinent rules of law. The most that can be said of the applicable evidence is that it was open to the jury to find that both the railroad company, through Lang, and Robbins himself, were negligent, and that their negligence directly concurred in bringing about the injury. It results that no error was committed in refusing plaintiff's requests on the subject of last clear chance. There is no evidence tending to show that Lang had any reason to anticipate Robbins' sudden turn into the zone of danger or that thereafter the injury could have been avoided. On the contrary, Robbins' previous conduct warranted the engineer in believing that, in view of the knowledge Robbins had already shown of the approaching locomotive, he would await its passage instead of making the fatal turn, or at least that he would again look for the locomotive's approach and regulate his movements accordingly (Illinois Central R. Co. v. Ackerman, 144 Fed. 959, 961, 962, 76 C. C. A. 13 [C. C. A. 8]; St. L. & S. F. R. Co. v. Summers, 173 Fed. 358, 360, 97 C. C. A. 328 [C. C. A. 8]); and the testimony is positive that Robbins' turn and movement into danger occurred too late to enable the engineer to avoid the injury. The vice, then, of the requests was that

they would open the company to a charge of negligence, regardless of the showing of concurring negligence in the decedent. The doctrine of last clear chance takes account of the acts and omissions of both the person injured and the defendant, and applies only where the defendant has either actual notice or is fairly chargeable with notice of the peril of the person injured, and negligently fails to avoid the injury; but the rule never applies where the concurrent neglect of both directly contributes to the injury. Gilbert v. Erie R. Co., 97 Fed. 747, 752, 38 C. C. A. 408 (C. C. A. 6); Winters v. Balt. & O. R. Co., 177 Fed. 44, 49, 100 C. C. A. 462 (C. C. A. 6); Dickson v. Chattanooga Ry. & Light Co., 237 Fed. 352, 353, 150 C. C. A. 366, L. R. A. 1917C, 845 (C. C. A. 6); Chicago, M. & St. P. Ry. Co. v. Bennett, 181 Fed. 799, 801, 104 C. C. A. 309 (C. C. A. 8); Gilbert v. Burlington, C. R. & N. Ry. Co., 128 Fed. 529, 533, 63 C. C. A. 27 (C. C. A. 8); Atchison, T. & S. F. Ry. Co. v. Taylor, 196 Fed. 878, 880, 116 C. C. A. 440 (C. C. A. 8); Northern Pac. Ry. Co. v. Jones, 144 Fed. 47, 51, 75 C. C. A. 205 (C. C. A. 9); Drown v. Traction Co., 76 Ohio St. 234, 247, 81 N. E. 326, 10 L. R. A. (N. S.) 421, 118 Am. St. Rep. 844. And see Davies v. Mann, 10 M. & W. 545, 548, which is generally regarded as the "origin of the doctrine of 'last clear chance.'" 55 L. R. A. 418, note. The real trouble with plaintiff's case is the difficulty of explaining decedent's action on reaching the platform; no explanation of this is given which is consistent with any right of recovery. Whether decedent then knew or was chargeable with knowing that the locomotive was approaching, was clearly the ultimate question of fact. This question was made prominent in the evidence and in the general charge, and must be regarded as concluded by the verdict.

[5, 6] 4. The assignment of error concerning exclusion of evidence offered to show that the place of collision was part of an ordinary highway seems to us to be immaterial. The evidence was undisputed that the public had for years been permitted to pass along the footpath before described, and that the decedent was quite as familiar with the dangers attending such passage as the company was itself. Whether the footpath thus used was or was not part of a highway, it is certain that no use had been made of the land as an ordinary highway or street for many years, and that no such use had ever been made of the railroad bridge. However, in view of the long and continued use proved to have been made of the footpath, the rights and obligations of the parties were no greater or no less than they would have been had the footpath admittedly formed part of an ordinary public highway. Northern Pacific Ry. Co. v. Jones, 144 Fed. 47, 49, 75 C. C. A. 205, and citations (C. C. A. 9). And this in effect was the ruling below.

[7-9] 5. The last assignment relied on concerns the admission of testimony to the effect that the reason for omitting to sound the bell or whistle as a warning of the locomotive's approach was that the approach did not lead to a highway crossing. What is said in the last two paragraphs would seem sufficient to answer this objection. Further, however, the company was under no statutory duty to give this warning in approaching a bridge such as the one here involved. See section 12549, Ohio G. C. But even if the injury had occurred at a road crossing and

the railroad's failure to give the warning were treated as negligence, this would not have relieved Robbins from the necessity of taking ordinary precautions for his own safety. Schofield v. Chicago & St. Paul Railway Co., 114 U. S. 615, 618, 5 Sup. Ct. 1125, 28 L. Ed. 224; Gilbert v. Erie R. Co., 97 Fed. 749, 38 C. C. A. 408 (C. C. A. 6); Chicago, M. & St. P. Ry. Co. v. Bennett, 181 Fed. at 802, 803, 104 C. C. A. 309 (C. C. A. 8). And certainly the duty of the railroad was not greater, nor that of Robbins less, because of the fact that the injury occurred at the entrance to the bridge. If, then, it be assumed that the testimony as to the reason for omitting to sound the bell or whistle was inadmissible, the error was harmless.

[10] Stress does not seem to be laid in the brief, as it was in oral argument, upon the claim that it was negligence in the railroad company simply to maintain this very narrow board walk—it is 72 feet long—for foot travel over the bridge; but, since the danger is manifest, it is plain that relief cannot be obtained in a case such as this, and especially as respects one who, like decedent, understood the situation perfectly.

The judgment is affirmed.

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes