694

No. 3764.

Circuit Court of Appeals, Fourth Circuit.

Argued Jan. 17, 1935.

Decided April 3, 1935.

Gardner L. Boothe, of Alexandria, Va. (Walter Hoyle, of Charlotte, N. C., and Armistead L. Boothe, of Washington, D. C., on the brief), for appellant.

Albert V. Bryan, of Alexandria, Va. (Richard E. Shands, of Washington, D. C., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and GLENN, District Judge.

GLENN, District Judge.

This is an appeal from a judgment based on a verdict in favor of the plaintiff in the sum of $5,000 found in the United States District Court for the Eastern District of Virginia. The appeal is taken from several rulings of the Trial Court and particularly from the refusal of the court to direct a verdict in favor of the defendant, motions for directed verdict being made both at the conclusion of the plaintiff's evidence and at the conclusion of all of the testimony. The court also refused a motion for a new trial and set forth the reasons therefor at some length in an opinion reported in the record.

The undisputed evidence, fairly construed, may be stated as follows: Early on the morning of January 24, 1933, the plaintiff, Cristobal Jimenez, a Spanish waiter, with eight companions was going from New York to Miami, Fla. The party was traveling in two automobiles, one was driven by a man named Braguy and the second was driven by a man, Otis Plechot. The two cars on this morning, as was their custom, were traveling fairly close together. They had left Alexandria, Va., about 6 o'clock in the morning and were proceeding southward towards Richmond when a Ford automobile containing four negroes, two men and two women, approached from the south. The eastern track of the road at this point was under repair and so marked off by barriers and lanterns which, according to the undisputed testimony, were burning at the time of the collision. This Ford car was going to New York and was referred to on trial and in argument as the New York car. The occupants of this car were evidently driving carelessly as they barely missed colliding with the Braguy car which was some little distance in front of the Plechot car in which Jimenez was riding. After this the New York car came on and sideswiped the Plechot car. This "side-swiping" tore the baggage, which was strapped on the left side of the Plechot car, loose from its fastenings and scattered it over the road for a considerable distance. Furthermore, the force of the collision between the New York car and the Plechot car blew out a tire on the New York car. The occupants of this New York car proceeded northward for some little distance and pulled off to the right side of the road. This distance

was variously estimated in the testimony, but it may be reasonably stated to have been about 100 feet. Braguy in the meantime had stopped his car on the southbound or west traffic lane and the Plechot car was also pulled over to the shoulder on the west side and stopped about 25 or 30 feet behind (i. e., north of) the Braguy car. At least five of the plaintiff's party, including plaintiff himself, got out from their cars and went northward along the highway to the place where the New York car was parked for the purpose of questioning the occupants. Just about the time that the plaintiff and his companions reached the New York car a truck, belonging to the defendant, and headed south on the same highway, came over a hill 250 or 300 feet north of the point where the New York car was parked. The headlights on this truck were burning brightly and were plainly visible to any one looking in that direction. Several of the men in the plaintiff's party, being somewhat excited as we might well expect, began waving and signaling to the truck to stop.

As to what happened after this there is a sharp conflict in the evidence as related by the eyewitnesses. The truck, however, according to the testimony of several of plaintiff's witnesses, did not slacken its speed, but continued on its course finally striking Jimenez at a point just about opposite the parked New York car. Several of the plaintiff's witnesses testified that the truck came on so rapidly that they were obliged to jump to one side or the other in order to escape injury. These witnesses estimated the speed at which the truck was traveling at the time it struck Jimenez as being from 35 to 40 miles per hour. The truck was confessedly a large van type, consisting of motor and trailer, and having a width of 7 feet 8 inches. There are several discrepancies between the testimony of some of the plaintiff's witnesses, but in the trial of a case where the witnesses were standing at different places and were all somewhat excited at the time of the events testified to, it is not unnatural that small discrepancies should be found. Trial experience extending over some years teaches us that small differences in exact details in the accounts of events which have happened very rapidly frequently occur, although all of the witnesses may be honestly trying to tell the truth. Exact agreement in minute detail would be so rare that it might create doubt as to the bona fides of the testimony.

For the defendant, evidence was introduced tending to show that the driver of the truck reduced his speed upon seeing the unusual situation in the road and slowed down upon approaching the confusion. That the driver, however, resumed his southward course at increased speed after the road had been cleared of men, and that, while the truck was proceeding at its resumed speed, Jimenez ran suddenly from behind the Ford directly into the path of the truck. The assistant driver, Wright, testified that at the time of the collision he was off duty but was awake. He was lying in the "sleeper" when the truck came over the hill, the "sleeper" is built directly back of the driver's seat and according to the testimony is so situate that one in the "sleeper" has a clear view of the road ahead. He testified that he saw the confusion in the road and all three of the parked cars. He further testified as to the actions of the driver upon approaching the scene and as to the use of the brakes on the truck, which appeared to have been in perfect condition. The driver had died before the trial so we do not have the benefit of his testimony. Other witnesses testified as to the condition of the road and the situation which they found when they came up shortly after the collision.

■ Much complaint was made on trial as to instructions given by the trial judge with reference to the doctrine of "last clear chance." Error in this connection is urged on argument here. We are of the opinion that it was not necessary for the court below, under any reasonable view of the testimony, to charge the law with respect to the "last clear chance." Any error in this respect, however, was error in favor of the defendant and does not justify the awarding of a new trial.

■ The excited group in the road and the baggage strewn about presented evidence which was sufficient to warn the truck driver that an unusual situation existed immediately in front of him. The road also was under repair and the lights and barriers were additional warnings of the need for careful approach. Due care for the rights and safety of those there on the highway demanded that he approach the scene with caution. There is substantial evidence, according to the testimony of several witnesses, that he did not do so. Under the conflict of evidence, it was clearly the duty of the trial judge to send the case to the jury. Garrison v. United States (C. C. A.)

62 F.(2d) 41. Likewise, the conflicting evidence as to the contributory negligence of the plaintiff presented a jury question. To take the view of the evidence as testified to by several of the defendant's witnesses, that the plaintiff, Jimenez, rushed from behind the Ford car and ran immediately in front of the truck as it picked up speed, is to remove any reason for the application of the law of "last clear chance." It would have been too late then for the truck driver to have avoided striking the plaintiff, Jimenez. The rule for determining the applicability of the doctrine is well settled, and we simply refer to a few of the leading authorities: Inland & Sea-Board Coasting Company v. Tolson, 139 U. S. 551, 11 S. Ct. 653, 35 L. Ed. 270; Miller v. Canadian Northern Ry. Co. (C. C. A.) 281 F. 664; Robbins v. Pennsylvania Co. (C. C. A.) 245 F. 435; Gilbert v. Erie Ry. Co. (C. C. A.) 97 F. 747.

Of course, the general law, as laid down in the decisions of the federal appellate courts, governs on the questions of negligence, contributory negligence, and the applicability of the doctrine of "last clear chance." This whole matter has been so well discussed in a recent opinion by Judge Parker that it is useless to do more than cite the case of Hewlett v. Schadel (C. C. A.) 68 F.(2d) 502, 91 A. L. R. 743.

In our opinion the case was properly submitted to the jury, and, as no prejudicial error has been shown, the judgment below should be affirmed.

Affirmed.